## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

VALERIE FLORES,

Plaintiff,

v.                                                    1:25-CV-683
(GTS/MJK)

CREDIT ONE BANK *et. al.*,

Defendant.

---

Valerie Flores, *Pro Se*

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE GLENN T. SUDDABY, U.S. District Judge:

### ORDER and REPORT- RECOMMENDATION

Plaintiff began this action on May 28, 2025, by filing a complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk sent Plaintiff's complaint and *IFP* application to this Court for review. (Dkts. 1, 2).

## I.    BACKGROUND

### A. Facts

The Defendant, Credit One Bank, a company with a principal place of business in Nevada, sent Plaintiff, a resident of New York, a $30 bill for "three months straight" for a credit card they issued her but that she was unable use. (Complaint, Dkt. 1, at 4).[1] Plaintiff paid the bills via money order from a now-

---

[1] All page references are to the CM/ECF pagination system.

closed-checking account. (*Id.*). Sometime later, Credit One Bank issued Plaintiff a refund and Plaintiff claims that the bank admitted it sent her a defective credit card. (*Id.*). A year and a half later, Credit One Bank sold a $60.00 balance to a collection agency. (*Id.*).

### B. Procedural History

Plaintiff now sues Credit One Bank, Resurgent Capital Services, a company headquartered in Ohio, and LVNV Funding, a company headquartered in South Carolina, for violating the Fair Credit Reporting Act ("FRCA"), "libel/slander with malicious intent," and "intentional tort" (*Id.* at 2, 3) (cleaned up). Plaintiff is seeking "the average going rate for a personal injury of $75,000" because the Defendants' "actions have hurt" her credit and reputation. (*Id.* at 4).

## II.    *IFP* APPLICATION

Plaintiff declares in her *IFP* application that she is unable to pay the filing fee. (Dkt. 2). After reviewing her application, this Court finds Plaintiff is financially eligible for *IFP* status.

## III.    STANDARD OF REVIEW

In addition to determining whether plaintiffs meet the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case— at any time—if it determines that the action is (1) frivolous or malicious; (2) fails

to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.    <u>DISCUSSION</u>

The Court recommends dismissing all Plaintiff's claims for three reasons. First, Plaintiff's claims against Defendants LVNV funding and Resurgent Capital Services are deficient under Fed. R. Civ. P. 8. Second, Plaintiff cannot plausibly allege that Credit One Bank a is credit reporting agency within the meaning of the FRCA. Third, the FRCA limits Plaintiff's ability to bring state-law-tort claims.

### A. Federal Rules of Civil Procedure 8

Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Indeed, to survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678 (cleaned up).

The Court recommends dismissing Plaintiff's claims against Defendants LVNV Funding and Resurgent Capital Services. The Complaint does not identify how Defendants LVNV Funding or Resurgent Capital Services harmed her. In fact, the complaint does not identify what actions either party took. *See generally* (Complaint, Dkt. 1). In essence, Plaintiff's Complaint is nothing more than a "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And that is simply not enough to state a claim. *See, e.g., Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (Adopting Report and Recommendation which dismissed a plaintiff's excessive force claim because that plaintiff failed to "identify what force" was used against him or "how it was excessive.").

### B. Fair Credit Reporting Act[2]

"The FCRA creates a private right of action against credit reporting agencies for the negligent ... or willful ... violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (citations omitted). For any such violation, "the credit reporting agency is liable to the consumer for actual damages sustained, the costs of the action together with reasonable attorney's fees, and, in the case of willful noncompliance, punitive damages." *Id.* (cleaned up).

To make out a § 1681(e)(b) claim, plaintiffs must show "whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Watson v. Caruso*, 424 F. Supp. 3d 231, 244 (D. Conn. 2019). But if the information is inaccurate, plaintiffs must then show that the: (1) "consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report;" (2) "consumer reporting agency reported inaccurate information about the plaintiff;" (3) "plaintiff was

---

[2] For this analysis, the Court is assuming that Plaintiff is bringing an action under § 1681(e)(b). That statute says: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681(e)(b).

injured; and" (4) "consumer reporting agency's negligence proximately caused the plaintiff's injury." *Id.* (cleaned up).

Plaintiff's claim against Credit One Bank cannot stand because the bank is not a credit reporting agency. *See Owusu v. New York State Ins.*, 655 F. Supp. 2d 308, 327 (S.D.N.Y. 2009) (holding that HSBC is not a consumer reporting agency just because it reported customer information.). "The FCRA does not impose obligations upon a creditor who merely passes along information concerning particular debts owed to it." *DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994) (cleaned up). Simply put, Credit One Bank is a creditor and bank, but not more. So Plaintiff cannot plausibly raise a FRCA claim against Credit One Bank. *See Anthony v. GE Cap. Retail Bank*, 321 F. Supp. 3d 469, 478 (S.D.N.Y. 2017) (granting summary judgment on the plaintiff's FRCA action against Synchrony bank because the plaintiff did not present evidence that Synchrony was a consumer reporting agency).

But should the District Court determine that Credit One Bank is a credit reporting agency, Plaintiff's complaint does not plausibly allege that the credit information is inaccurate. A "credit report is inaccurate . . . when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (collecting cases)

(cleaned up). Here, Plaintiff's claims are specious at best. Plaintiff alleges that Credit One Bank issued her a credit card that she never used, charged her three times over the course of three months, but she paid the bills via money order. (Complaint, Dkt. 1, at 4). It strains credulity to believe that Credit One Bank charged Plaintiff for a defective card for three months and she paid those bills— without ever calling the bank to ask what she was being charged for.

### C. State Law Claims

The District Court should dismiss Plaintiff's state-law-tort claims because Plaintiff has not made the requisite showing of malice or willful intent to injure her. Section 1681h(e) of the FCRA states that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Otherwise stated, "section 1681h(e) preempts defamation [and other state-based] claims against credit reporting agencies unless the alleged false information is furnished with malice or willful intent to injure the plaintiff." *Thompson v. Equifax Info. Servs*. LLC, No. 20-CV-6101, 2022 WL 2467662, at *10 (E.D.N.Y. Feb. 24, 2022) (cleaned up). Plaintiff seeks to bring an intentional tort claim against Defendants.

But the Complaint is devoid of any facts showing that Defendants have acted with malice or willful intent. So Plaintiff's claim, as it is, cannot stand. *See Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CIV-3760 (PAE), 2013 WL 1430467 at *10 (S.D.N.Y. Apr. 8, 2013) (granting summary judgment on the plaintiff's defamation and common law tort claims because the plaintiff failed to allege facts establishing malice) (collecting cases) (cleaned up). As a result, Plaintiff's intentional tort claims should be dismissed.

### D. Opportunity to Amend

Generally, before courts dismiss a *pro se* complaint or any part of the complaint on its own, they should afford the plaintiff the opportunity to amend at least once; but leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, there is no futility for three reasons. First, Plaintiff can add facts to make the Complaint Rule 8 compliant. Second, Plaintiff can set forth facts concerning a credit reporting agency who she alleges took adverse action concerning her credit report that she alleges violates FCRA and add that party as a defendant. Third, Plaintiff can add facts, if accurate,

to establish that Defendants acted with malice or willful intent, to prove her state-tort-law claims.

## V.    <u>CONCLUSION</u>

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed *IFP* (Dkt. 2) is **GRANTED**[3]; and it is further

**RECOMMENDED,** that Plaintiff's claims against Defendants LVNV Funding and Resurgent Capital Services, should be dismissed under Fed. R. Civ. P. 8 **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** Plaintiff's FRCA claim Defendant Credit One Bank should be dismissed **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Plaintiff's state-tort-law claims against all Defendants should be dismissed **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**ORDERED,** that while Plaintiff may file objections to this Order and Report-Recommendation, before Plaintiff submits any amended pleading, she

---

[3] The Court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

should wait for the District Court to rule on the above Orders and

Recommendations, and it is further

  **ORDERED**, that the Clerk of the Court serve a copy of this Order and

Report-Recommendation on Plaintiff by regular mail.[4]

  Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14

days within which to file written objections to the foregoing report. Such

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: June 16, 2025

                _____

                Hon. Mitchell J. Katz
                U.S. Magistrate Judge

---

[4] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

321 F.Supp.3d 469
United States District Court, S.D. New York.

Frank ANTHONY, Plaintiff,
v.
GE CAPITAL RETAIL BANK, Defendant

14-CV-2809 (ALC)
|
Signed 08/16/2017

**Synopsis**

**Background:** Consumer brought action against credit card issuer, alleging that issuer violated the Telephone Consumer Protection Act (TCPA), the Fair Credit Reporting Act (FCRA), and the Truth in Lending Act (TILA) by issuing unauthorized credit card and then trying to collect the debts owed on the account. Issuer brought counterclaim for breach of contract, alleging that consumer owed money on unpaid debt. Issuer moved for summary judgment.

**Holdings:** The District Court, Andrew L. Carter, Jr., J., held that:

[1] consumer provided prior express consent for issuer to contact him on his cell phone number, and thus, consumer could not succeed on his TCPA claim;

[2] credit card that issuer sent to consumer was substitution card sent in response to consumer's complaints of identity theft, and thus, issuer was not required by the TILA to provide consumer with notice of the terms of the account;

[3] issuer did not willfully or negligently fail to comply with FCRA's investigation requirements for credit disputes, and thus did not violate its duty under the FCRA to investigate consumer's dispute as to debt owed on credit card account as shown on consumer's credit report; and

[4] under New York law, consumer breached credit card account agreement by failing to pay the balance on his account, and thus, issuer was entitled to recover the value of the credit extended under the agreement.

Motion granted.

**Procedural Posture(s):** Motion for Summary Judgment.

West Headnotes (20)

**[1]    Summary Judgment**  ⚷  Conflicting Evidence; Extent of Disagreement or Dispute as to Facts

When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Fed. R. Civ. P. 56(a).

1 Case that cites this headnote

**[2]**    **Summary Judgment**  👉  Speculation or conjecture; mere assertions, conclusions, or denials

A party's self-serving, uncorroborated, and conclusory allegations are not enough to raise a genuine dispute of material fact on a motion for summary judgment when documentary evidence clearly indicates the opposite. Fed. R. Civ. P. 56(a).

1 Case that cites this headnote

**[3]**    **Summary Judgment**  👉  Pro se litigants

Pro se parties are entitled to extra consideration on summary judgment motions. Fed. R. Civ. P. 56(a).

**[4]**    **Summary Judgment**  👉  Pro se litigants

A District Court has an obligation to read a pro se party's supporting papers liberally on a summary judgment motion and interpret them to raise the strongest arguments that they suggest. Fed. R. Civ. P. 56(a).

**[5]**    **Summary Judgment**  👉  Speculation or conjecture; mere assertions, conclusions, or denials

A pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56(a).

**[6]**    **Telecommunications**  👉  Permission or Consent

Consumer provided prior express consent for credit card issuer to contact him on his cell phone number, and thus, consumer could not succeed on his Telephone Consumer Protection Act (TCPA) claim against issuer for allegedly trying to collect debts owed on purported unauthorized credit card account, where consumer accepted online offer for credit card, credit card account agreement included consent to communications clause which provided express consent for issuer to contact consumer, and consumer accepted the terms and agreement when activating the credit card. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(b)(1)(A)(iii).

**[7]**    **Telecommunications**  👉  Permission or Consent

Capturing a debtor's phone number with caller ID tools does not constitute "express consent" within meaning of the Telephone Consumer Protection Act (TCPA). Communications Act of 1934 § 227, 47 U.S.C.A. § 227(b)(1)(A)(iii).

**[8]**    **Evidence**  👉  Business Records in General

Business records exempt from hearsay may include data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice. Fed. R. Evid. 803(6).

**[9]**    **Evidence**  👉  Certificates and affidavits
         **Summary Judgment**  👉  Documents and documentary evidence

Credit card issuer's business records had sufficient indicia of trustworthiness to be considered reliable under the business records hearsay exception, and thus, issuer's custodian could rely on the records to support her testimony in

her summary judgment affidavit in consumer's action against issuer alleging violations of the Telephone Consumer Protection Act (TCPA); custodian averred that the records were electronic records made at the time of the events by employee of issuer with knowledge of the act and that the records were maintained in the ordinary course of issuer's regularly conducted business. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(b)(1)(A)(iii); Fed. R. Evid. 803(6)(B).

1 Case that cites this headnote

More cases on this issue

**[10]    Telecommunications**  🔑  Permission or Consent

Consumer could not unilaterally revoke his express consent for credit card issuer to contact him on his cell phone number, and thus, consumer could not succeed on his Telephone Consumer Protection Act (TCPA) claim against issuer for allegedly trying to collect debts owed on purported unauthorized credit card account; consumer's acceptance of credit card account terms, which included consent to communication clause, was bargained-for consideration. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(b)(1)(A)(iii).

**[11]    Finance, Banking, and Credit**  🔑  Disclosure Requirements in General

Credit card that card issuer sent to consumer was substitution card sent in response to consumer's complaints of identity theft, and thus, issuer was not required by the Truth in Lending Act (TILA) to provide consumer with notice of the terms of the account, where consumer sent issuer notice of cancellation of credit card alleging that he was victim of identity theft and fraud, issuer sent replacement card in response to the notice, and issuer transferred the balance of consumer's account to the replacement card account. Truth in Lending Act § 132, 15 U.S.C.A. § 1642; 12 C.F.R. pt. 226.5(b)(1)(i)(6)(iii), Supp. I.

**[12]    Finance, Banking, and Credit**  🔑  Liability for inaccurate or incomplete information

The Fair Credit Reporting Act (FCRA) imposes a duty upon furnishers of credit information to investigate credit disputes in accordance with the statute after receiving notice of a dispute from a credit reporting agency (CRA). Consumer Credit Protection Act § 621, 15 U.S.C.A. § 1681s.

5 Cases that cite this headnote

**[13]    Finance, Banking, and Credit**  🔑  Liability for inaccurate or incomplete information

Under the Fair Credit Reporting Act (FCRA), furnishers of credit information have an obligation to (1) conduct an investigation with respect to the disputed information, (2) review all relevant information provided by the credit reporting agency (CRA), (3) report the results of the investigation to the CRA, and (4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs that had received the information. Consumer Credit Protection Act § 621, 15 U.S.C.A. § 1681s.

4 Cases that cite this headnote

**[14]    Finance, Banking, and Credit**  🔑  Liability for inaccurate or incomplete information

A plaintiff alleging a violation of the Fair Credit Reporting Act (FCRA) needs to establish that (1) the furnisher of credit information received notice from a credit reporting agency of the dispute and (2) the furnisher acted in willful or negligent noncompliance with the statute. Consumer Credit Protection Act § 621, 15 U.S.C.A. § 1681s.

4 Cases that cite this headnote

**[15]    Finance, Banking, and Credit** 🔑 Liability for inaccurate or incomplete information

Credit card issuer did not willfully or negligently fail to comply with Fair Credit Reporting Act's (FCRA) investigation requirements for credit disputes, and thus did not violate its duty under the FCRA to investigate consumer's dispute as to debt owed on credit card account as shown on consumer's credit report; issuer received notice of dispute from credit reporting agency, issuer conducted investigation of the dispute, which revealed consumer's credit application, billing statements, record of purchases and payments, and acceptance of upgraded credit card, and issuer notified consumer of its findings after verifying consumer's account. Consumer Credit Protection Act § 621, 15 U.S.C.A. § 1681s.

**[16]    Finance, Banking, and Credit** 🔑 Reporting agencies

**Finance, Banking, and Credit** 🔑 Credit reporting

The Fair Credit Reporting Act (FCRA) provides a right of action against a consumer reporting agency, which refers to firms that are in the business of assembling and evaluating consumer credit information. Consumer Credit Protection Act § 611, 15 U.S.C.A. § 1681i.

2 Cases that cite this headnote

**[17]    Finance, Banking, and Credit** 🔑 Furnishers of information

The Fair Credit Reporting Act (FCRA) does not impose obligations upon a creditor who merely passes along information concerning particular debts owed to it. Consumer Credit Protection Act § 611, 15 U.S.C.A. § 1681i.

**[18]    Finance, Banking, and Credit** 🔑 Liability for inaccurate or incomplete information

Consumer could not maintain cause of action against credit card issuer, which was creditor and bank that offered retail credit cards to consumers, under provision of Fair Credit Reporting Act (FCRA) providing for actions against consumer reporting agencies, absent showing that issuer or its subsidiaries operated like consumer reporting agency. Consumer Credit Protection Act § 611, 15 U.S.C.A. § 1681i.

2 Cases that cite this headnote

**[19]    Contracts** 🔑 Grounds of action

**Summary Judgment** 🔑 Contracts in general

In order for a defendant to succeed on a motion for summary judgment on its breach of contract claim, New York law requires defendant to show that the undisputed material facts establish the existence of a contract, defendant's performance of the contract, plaintiff's non-performance of the contract, and damages stemming from the breach.

**[20]    Finance, Banking, and Credit** 🔑 Performance or breach

**Finance, Banking, and Credit** 🔑 Judgment and relief

Under New York law, consumer breached credit card account agreement by failing to pay the balance on his account, and thus, credit card issuer was entitled to recover the value of the credit extended under the agreement, where consumer opened credit card account, account agreement included provision requiring consumer to pay all amounts

owed on the account, consumer accepted and activated upgraded credit card, and consumer made numerous payments on the account.

### Attorneys and Law Firms

**\*472** Frank Anthony, Pro se.

Jason H. Casell, Michael H. Bernick, Reed Smith LLP, Houston, TX, Peter Christopher Gourdine, Reed Smith LLP, New York, NY, for Defendant.

### MEMORANDUM AND ORDER GRANTING DEFENDANT SUMMARY JUDGMENT

ANDREW L. CARTER, JR., United States District Judge

Plaintiff Frank Anthony ("Plaintiff"), pro se, brings this action against Defendant GE Capital Retail Bank, now known as Synchrony Bank ("Synchrony" or "Defendant"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*, the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681 *et seq.,* and the Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601 *et seq.* Plaintiff accused Synchrony of issuing an unauthorized credit card in his name and **\*473** then engaging in illegal efforts to collect the debts owed on those accounts. Synchrony brought a counterclaim for breach of contract alleging Plaintiff owed money on the unpaid debt. Synchrony now moves pursuant to Fed. R. Civ. P. 56, for summary judgment on all claims. For the reasons set forth below Synchrony's motion is **GRANTED.**

### BACKGROUND

Synchrony, f/k/a GE Capital Retail Bank, is a federally chartered savings association that issues consumer credit card accounts. Def's Affidavit of Martha Koehler ("Koehler Aff") ¶¶ 1–2, ECF No. 85-1 Ex A. Synchrony's credit lines include, inter alia, the GAP credit card program and GAP Visa Dual Card program. *Id.* ¶ 6. On March 22, 2007, Synchrony received a GAP card credit application containing Plaintiff's full name, social security number, email address, mother's maiden name, home address, and phone number. *Id.* Ex. A-1. Synchrony approved the credit card application. *Id.* Synchrony sent a GAP card ending in 0633 and a copy of the company's account agreement to Plaintiff's home address. *Id.* Ex. A-2. Synchrony's business records show purchases and payments on the GAP card ending in 0633 spanning for nearly five years. *Id.*

In June, 2011 Plaintiff's home address changed. Deposition of Frank Anthony ("Pl's Depo.") at 12:2–12:18, ECF 85 Ex. C. The address on the GAP account was then changed to mirror Plaintiff's new home address the same month. Koehler Aff. Ex. A-3, SYNC 000108.

In July, 2012, Synchrony sent Plaintiff an online offer to upgrade the GAP card ending in 0633 to a GAP Visa dual card. *Id.* Ex. A, ¶ 13. The offer was accepted. *Id.* Synchrony sent a GAP Visa card ending in 4157 and a copy of an account agreement to Plaintiff's home address. *Id.* ¶ 14. On July 18, 2012, Plaintiff called Synchrony using the phone number listed on his GAP account. Ex. A, ¶ 17; Ex. A-6; Anthony Depo. at 22:5–22:8. On that call, Plaintiff activated the GAP Visa card ending in 4157 by providing Synchrony with his social security number. Plaintiff also accepted the account terms and conditions. One provision of the GAP Visa account agreement stated:

> **Consent to Communications.** You consent to us contacting you using all channels of communication and for all purposes. We will use the contact information you provide to us. You also consent to us and any other owner or servicer of your account contacting you using any communication channel. This may include text messages, automatic telephone dialing systems and/or an artificial or prerecorded voice. This consent applies even if you are charged for the call under your phone plan. You are responsible for any charges that may be billed to you by your communications carriers when we contact you.

*Id.* Ex. A, ¶ 15; Ex. A-5 at 3. The GAP Visa card ending in 4157 incurred purchases and payments for two years. *Id.* Ex. A-3, SYNC 000174–76. Synchrony sent the billing statements for the GAP Visa card ending in 4157 to Plaintiff's email address. *Id.* Ex. A, ¶ 25. Plaintiff listed that same email address in his contact information in this suit. In September, 2012, a purchase was made on the GAP Visa card ending in 4157 at "Sebastian Grey New York NY". *Id.* Ex. A-3, SYNC 000176. Plaintiff wore a suit from Sebastian Grey Clothiers to his deposition in this case. Anthony Depo. at 194:9–196:19.

In or around October, 2013, Plaintiff obtained a copy of his credit report. First Amended Complaint ("FAC") ¶¶ 11 ECF No. 34. Plaintiff sent a "notice of dispute/Freedom of Information request" and **\*474** debt disclosure interrogatories to Synchrony. *Id.* ¶¶ 13–14, Ex. C. Synchrony responded that although Plaintiff's paper application no longer existed due to the age of the original account opening and Synchrony's record retention guidelines. *Id.* Synchrony included billing statements in an attempt to verify the debt. *Id.* ¶ 15.

In or around December, 2013, Plaintiff sent Synchrony a "notice of administrative default" and a notice of cancellation of the GAP Visa card ending in 4157. *Id.* ¶ 17. Plaintiff also submitted a Federal Trade Commission affidavit alleging identity theft and fraud, along with disputed documentation for the GAP Visa card ending in 4157, to three credit reporting agencies (Equifax, Experian, and Trans Union). *Id.* ¶ 18, Ex. G. Synchrony responded with a letter on which two boxes were checked, stating "Customer benefited from use of card" and "Account opened greater than 1 year with verifiable payment history." *Id.* Ex. H.

On February 28, 2014, Synchrony sent Plaintiff a GAP Visa card ending in 2094 given Plaintiff's complaints of identity theft. Koehler Aff. Ex. A, ¶ 23. Thereafter Synchrony engaged in attempts to collect the remaining balance of $2600.52 on the GAP Visa account. *Id.* ¶¶ 64–65.

Plaintiff initiated this action in 2014 in response to Synchrony's attempt to collect the debt on the GAP credit account.

## DISCUSSION

### A. Summary Judgment Standard

**[1]   [2]**  Where there are no genuine issue as to any material fact, a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-movant cannot rest on conclusory allegations. Instead, he or she must designate specific facts showing there is a genuine issue of material fact for trial. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). A party's self-serving, uncorroborated, and conclusory allegations are not enough to raise a genuine dispute of material fact when documentary evidence clearly indicates the opposite. *See Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is

unchallenged, should be credited by the court" when resolving a motion for summary judgment, "if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

[3]  [4]  [5]  Pro se parties are entitled to "extra consideration" on summary judgment motions. *Salahuddin v. Coughlin,* 999 F.Supp. 526, 535 (S.D.N.Y.1998). This Court has an obligation to "read the pro se party's supporting papers liberally, and interpret them to raise the strongest arguments they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994); *accord,* *Soto v. Walker,* 44 F.3d 169 (2d Cir.1995). However, a pro se party's "bald assertion, completely unsupported by evidence," is not sufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir. 1991).

**\*475 B. TCPA Claim**

[6]  [7]  Defendant contends that summary judgment is warranted on Plaintiff's TCPA claim, because Plaintiff provided the Synchrony with his phone number and express consent to be contacted. Defendant's Memorandum of Law in Support of Summary Judgment ("Def's Mem.") at 8–10, ECF 85. To succeed on a TCPA claim, Plaintiff needed to establish that (1) the defendant called the plaintiff's cellular telephone number; (2) using, an automatic telephone dialing system; (3) without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). The FCC has stated that "the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 564 (2008). In applying that ruling, courts have been "almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent." *Saunders v. NCO Fin. Sys., Inc.,* 910 F.Supp.2d 464, 467 (E.D.N.Y. 2012) (citations omitted). It bears worth noting, however, that capturing a debtor's phone number with caller ID tools does not constitute express consent. *Castro v. Green Tree Servicing LLC,* 959 F.Supp.2d 698, 721 (S.D.N.Y. 2013) (citations omitted). Here, Defendant submitted an electronic version of Plaintiff's 2007 GAP credit card application. The credit application listed Plaintiff's identifying information including, inter alia, his phone number ending in 7845, home address, and social security number. In his deposition, Plaintiff admitted that he used the phone number ending in 7845 at the time the application was submitted to Synchrony. Plaintiff also admitted that he currently uses the phone number ending in 7845. Defendant also submitted several years of billing statements that were sent to Plaintiff's home addresses. Plaintiff confirmed in his deposition that Synchrony's billing statements listed his accurate addresses. Also important was Plaintiff's acceptance of an online offer to GAP Visa Card ending in 4157 in 2012. Defendant submitted a copy of the GAP Visa account agreement that was sent to Plaintiff's home address. The Gap Visa account agreement included a "Consent to Communications" clause which provided express consent for Synchrony to contact Plaintiff. Plaintiff's phone number ending in 7845 called Synchrony around the same time to activate the Gap Visa.card ending in 4157. On that call, Plaintiff provided his social security number, accepted the terms and agreement for the Gap Visa account, and activated the Gap Visa card ending in 4157.

[8]  [9]  Plaintiff failed to submit any evidence in support of his opposition to summary judgment. Plaintiff did not submit phone records showing that Synchrony called his cell phone in an attempt to collect a debt. Plaintiff did not submit evidence regarding Synchrony's use of an automatic telephone dialing system. Plaintiff also failed to rebut Synchrony's evidence regarding his express consent. Instead of submitting evidence of his own, Plaintiff simply attacked Synchrony's Koehler Affidavit calling it hearsay, unauthenticated, and untruthful. Plaintiff's Memorandum of Law in Opposition to Summary Judgment ("Pl's Mem.") at 7-9, ECF 94. Contrary to Plaintiff's arguments, however, it was not improper for Synchrony's custodian to rely on business records to support her testimony. "A record of an act, event, condition, opinion, or diagnosis" is admissible if "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, **\*476** or calling, whether or not for profit." Fed. R. Evid. 803(6)(B). Under Rule 803(6), business records exempt from hearsay may include "data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice." *See Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,* 38 F.3d 627, 632 (2d Cir. 1994). The Koehler Affidavit avers that the records upon which the testimony was based are electronic records made "at or about the time of the events reflected in each record, by an employee or representative of Synchrony with knowledge of the act, event, condition, or opinion recorded to make the record original or exact duplicates of the original and were maintained in the ordinary course of Synchrony's regularly conducted business." Koehler Aff. ¶ 4. The fact that the affiant examined electronic copies of Synchrony's records does not raise an issue of material fact that would

preclude summary judgment. Also irrelevant is whether the affiant is physically located at Synchrony's headquarters in Utah. Thus, the Court finds that "the records have sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac Corp.*, 38 F.3d at 632 (citation and internal quotation marks omitted).

 **[10]** Plaintiff also contends that he revoked his express consent to be contacted. Pl's Mem. at 10-11. The TCPA is silent with respect to the issue of whether express consent is revocable. *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017). However, the FCC has ruled that express consent can be revoked where a consumer "has freely and unilaterally given his or her informed consent to be contacted ...." *Id.* (citation omitted). The Second Circuit recently narrowed the FCC's interpretation, holding that a consumer who provides express consent to be contacted as "bargained-for consideration in a bilateral contract" cannot unilaterally revoke such consent. *Id.* at 57. The Court finds that Plaintiff's acceptance of the terms of the GAP card, which included his "consent to communication" was the kind of bargained-for consideration that is not unilaterally revocable. But even if Plaintiff's express consent was unilaterally given as opposed to a bargained-for exchange, Plaintiff has not shown that he revoked his express consent. Unlike *Reyes*, the Plaintiff here failed to submit sworn testimony or documentary evidence showing revocation and/or a clear desire not to receive further calls. *Id.* at 55. In fact, none of Plaintiff's correspondence with Synchrony mentions the credit card company's attempts to collect the balance owed on the Gap card. *See* SAC Exs. 2, 4, 6.

Defendant's summary judgment evidence establishes that Plaintiff provided prior express consent to contact him on his cell phone number. Thus, as a matter of law, Synchrony is entitled to summary judgment.

### C. TILA Claim

 **[11]** Defendant moves for summary judgment on Plaintiff's TILA claim, arguing that the GAP Visa Card ending in 2094 was a substitution card sent in response to Plaintiff's complaints of identity theft. Def's Mem. at 13–14. Defendant adds that, because the Gap Visa Card ending in 2094 was a substitution and not an unsolicited credit card, Defendant was not required to send disclosures required by the TILA. *Id.* at 14–15.

TILA forbids credit card issuers from sending ready-to-use cards to consumers without receiving a request or application from the consumer. 15 U.S.C. § 1642. However, "renewal" and "substitution"  **\*477**  cards on a consumer's credit account do not fall under TILA's prohibition. *Id.* The Federal Reserve Board—charged with implementation of TILA—issued regulations and official commentary on the term "substitution" and its contours. Official Staff Interpretation, 12 C.F.R. pt. 226, Supp. I; *see Acosta v. Target Corp.*, 745 F.3d 853, 858 (7th Cir. 2014). The Official Staff Interpretation provides that "[w]hen a card issuer substitutes or replaces an existing credit card account with another credit card account, the card issuer must either provide notice of the terms of the new account ... or provide notice of the changes in the terms of the existing account ...." 12 C.F.R. pt. 226.5(b)(1)(i)(6), Supp. I. However, the Federal Reserve Board explicitly addressed the case at bar, stating that "a card issuer that replaces a credit card or provides a new account number because the consumer has reported the card stolen or because the account appears to have been used for unauthorized transactions is not required to provide a notice ...." 12 C.F.R. pt. 226.5(b)(1)(i)(6)(iii), Supp. I. This is not a case where a consumer was sent an unsolicited ready-to-use credit card. Plaintiff applied for and used a GAP credit account only to complain of fraud on his account six years later. In December, 2013, Plaintiff sent Synchrony a notice of cancellation of the GAP Visa card ending in 4157, alleging that he was the victim of identity theft and fraud. In response to Plaintiff's claim of identity theft, Synchrony closed the GAP Visa card ending in 4157 and sent Plaintiff a replacement GAP Visa Card ending in 2094. Synchrony also transferred the balance of Plaintiff's account to the GAP Visa Card ending in 2094. Without any legal support, Plaintiff maintains that Synchrony's substitution constituted a new account triggering TILA disclosures, because the bank ignored Plaintiff's request to cancel the account. Pl's Mem. at 13. Plaintiff is wrong. Even if Synchrony somehow "ignored" a request to cancel the credit account, the plain language of § 1642 does not address such a grievance. In a digital world rife with electronic fraud, it seems axiomatic that a credit card company would not be held liable for sending a customer, who complains of fraud, a replacement card to ensure the security of the account. Defendant's motion for summary judgment is granted.

### D. FCRA Claim

Defendant argues that summary judgment is warranted on Plaintiff's FCRA claim, because Synchrony conducted a sufficient investigation of Plaintiff's account and verified the information sent to consumer reporting agencies was accurate. Def's Mem. at 11–12. Defendant also contends that § 1681i governs consumer reporting agencies not a data furnisher like Synchrony. *Id.* at 12–13.

### 1. *15 U.S.C. § 1681s*

**[12]    [13]    [14]    [15]**  FCRA § 1681s imposes a duty upon furnishers of credit information to investigate credit disputes in accordance with the statute after receiving notice of a dispute from a credit reporting agency ("CRA"). *Nguyen v. Ridgewood Sav. Bank,* 66 F.Supp.3d 299, 304 (E.D.N.Y. 2014). To that end, furnishers of credit information have an obligation to "1) conduct an investigation with respect to the disputed information, 2) review all relevant information provided by the CRA, 3) report the results of the investigation to the CRA, and 4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs that had received the information." *Ritchie v. N. Leasing Sys., Inc.,* No. 12-CV-4992 (KBF), 2016 WL 1241531, at *17 (S.D.N.Y. Mar. 28, 2016) (citations, alterations, and internal quotation marks omitted). **\*478** "Although the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under this statute, courts both within and outside the Circuit have assumed a reasonableness standard for judging the adequacy of the required investigation." *Jenkins v. LVNV Funding, LLC,* No. 14-CV-5682 (SJF) (AKT), 2017 WL 1323800, at *10 (E.D.N.Y. Feb. 28, 2017) (citations, alterations, and internal quotation marks omitted). Thus, Plaintiff needed to establish that (1) Synchrony received notice from a credit reporting agency of the dispute and (2) Synchrony acted in "willful or negligent noncompliance with the statute." *Id.* Defendant does not contest that it received notice from a credit reporting agency triggering its duty to investigate the account listed in Plaintiff's name. However, there is no evidence that Synchrony willfully or negligently failed to comply with the statute's investigative requirements. It is undisputed that Synchrony conducted an investigation of the dispute, which revealed Plaintiff's credit application, billing statements, record of purchases and payments, and acceptance of an upgraded GAP Visa card. After verifying Plaintiff's account, Synchrony notified Plaintiff of its findings. Accordingly, Defendant's motion for summary judgment is granted.

### 2. *15 U.S.C. § 1681i*

**[16]    [17]    [18]**  FCRA § 1681i provides a right of action against a consumer reporting agency, which "refers to firms that are in the business of assembling and evaluating consumer credit information." *DiGianni v. Stern's,* 26 F.3d 346, 349 (2d Cir. 1994) (citation omitted). To be clear, "[t]he FCRA does not impose obligations upon a creditor who merely passes along information concerning particular debts owed to it." *Id.* It is undisputed that Synchrony is a creditor and bank that offers retail credit cards to consumers, much like the retailer in *DiGianni.* Plaintiff has not presented evidence that Synchrony or its subsidiaries operate like a consumer reporting agency governed by § 1681i. Thus a cause of action against Synchrony under § 1681i is improper. Defendant's motion for summary judgment is granted. *Owusu v. N.Y. State Ins.,* 655 F.Supp.2d 308, 327 (S.D.N.Y. 2009).

### E. Breach of Contract Counterclaim

**[19]    [20]**  Defendant moves for summary judgment on its breach of contract counterclaim. Def's Mem. at 15–16. In order to succeed on a motion for summary judgment, New York law requires Defendant to show that the undisputed material facts establish the existence of a contract, Defendant's performance of the contract, Plaintiff's non-performance of the contract, and damages stemming from the breach. *CSI Inv. Partners II, L.P. v. Cendant Corp.,* 507 F.Supp.2d 384, 413 (S.D.N.Y. 2007), aff'd, 328 F. App'x 56 (2d Cir. 2009). As an initial matter, the Court finds it appropriate to exercise supplemental jurisdiction because the claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As to the merits of Defendant's counterclaim, the summary judgment evidence shows that Plaintiff opened a GAP credit card account in 2007. The GAP account agreement included a "You Promise to Pay" provision requiring debtors to pay all amounts owed on the account. Plaintiff used the GAP card for five years. Synchrony sent countless billing statements to Plaintiff's home address. The billing statements show nearly 60 payments were made on the account. In 2012, Plaintiff accepted and activated the upgraded GAP Visa card in July 2012. Plaintiff used the GAP Visa card for numerous transactions until late 2013 and actually **\*479** made payments during this time frame, further evidencing the validity of this contract.

In the face of this evidence, Plaintiff argues that during the investigation, the CRA deleted the negative information pertaining to the GAP card and GAP Visa accounts. Pl's Mem. at 14. According to Plaintiff, the CRA's removal of the negative information is evidence that the account was procured through fraudulent means. The Court disagrees. The CRA's decision to remove negative information from Plaintiff's credit report while Defendant investigated the dispute has no bearing on whether Plaintiff entered a contract with Defendant. Beyond conclusory allegations and blanket denials, Plaintiff has failed to raise a triable issue of fact as to whether he used the GAP credit cards. For example, Plaintiff did not show he lived somewhere other than the address where his GAP card statements were sent. Plaintiff has not presented evidence that someone else used his cell phone to call Synchrony and activate the GAP Visa card. Nor has Plaintiff shown that he had been the victim of fraud in the past, which would raise an inference that the GAP card accounts may have also been fraudulently obtained.

Defendant fully performed its obligations under the account agreement by extending credit to Plaintiff on the account. Therefore, Defendant is entitled to recover the value of the credit extended under the agreement. *Towers World Airways Inc. v. PHH Aviation Sys. Inc.*, 933 F.2d 174, 179 (2d Cir. 1991).

## CONCLUSION

For the aforementioned reasons Defendant's motion for summary judgment is **GRANTED**. Defendant is hereby **ORDERED** to submit a proposed judgment for the breach of contract counterclaim. The Clerk of Court is respectfully directed to terminate ECF No. 84.

**SO ORDERED.**

**All Citations**

321 F.Supp.3d 469

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 22 of 50

Khan v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 2492762
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Zahed KHAN, Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC, Defendant.

18-CV-6367 (MKB)
|
Signed 06/14/2019

**Attorneys and Law Firms**

Subhan Tariq, The Tariq Law Firm, PLLC, Long Island City, NY, for Plaintiff.

Boris Brownstein, Clark Hill PLC, Princeton, NJ, Jonathan Daniel Klein, Clark Hill PLC, New York, NY, for Defendant.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

**\*1** Plaintiff Zahed Khan commenced the above-captioned on October 18, 2018, against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC, in New York City Civil Court, County of Queens, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). (Compl., annexed to Notice of Removal as Ex. B, Docket Entry No. 1-2.) Plaintiff alleges that Defendants failed to assure maximum possible accuracy of the credit information they reported about him and failed to conduct a reasonable investigation as to the accuracy of this information. (*Id.* ¶¶ 8, 19.) On November 8, 2018, Trans Union, LLC filed a notice of removal removing the action from New York City Civil Court to this Court. (Notice of Removal, Docket Entry No. 1.) Plaintiff subsequently settled his claims against Experian Information Solutions, Inc., (Notice of Settlement, Docket Entry No. 27), and dismissed his claims against Trans Union, LLC, (Stip. Of Dismissal, Docket Entry No. 28).

Currently before the Court is Defendant Equifax Information Services, LLC's ("Defendant") motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 42.) For the reasons set forth below, the Court grants Defendant's motion and dismisses the Complaint, but grants Plaintiff leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order.

### I. Background

On an unspecified date in 2017, Plaintiff settled a Telephone Consumer Protection Act ("TCPA") lawsuit against Citibank (the "Citibank Settlement"). [1] (Compl. ¶ 11.) In the Citibank Settlement, "Citibank agreed to remove and/or delete [a] negative trade line made or reported in relation to [a] debt" (the "Citibank Tradeline"). (*Id.*)

In April of 2018, Plaintiff became aware that "his credit was still being adversely affected by [the Citibank Tradeline] due to [Defendant] including the trade line in [its] reports on his credit." (*Id.* ¶ 12.) Defendant continued to report the Citibank Tradeline "as paid and/or charged off." (*Id.*) On April 27, 2018, Plaintiff "informed [Defendant] of this fact in writing and requested in writing that [it] remove the Citibank account from his credit report." (*Id.* ¶ 13.) Defendant did not respond. (*Id.* ¶ 15.) On June 22, 2018, "Plaintiff ran his Equifax credit report ... and noticed that [Defendant] was still reporting the Citibank

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 23 of 50

Khan v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2019)

account on his credit report." (*Id.*) Plaintiff alleges that Defendant "continued to report inaccurate information on Plaintiff after receiving his disputes, violating the FCRA by failing to conduct a reasonable reinvestigation and by continuing to report inaccurate information about Plaintiff's credit." (*Id.* ¶ 17.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b. Because Plaintiff has not alleged that the information Defendant reported about him is inaccurate, he fails to state a claim under sections 1681e(b) and 1681i of the FCRA

**\*2**  Defendant argues that the Court should dismiss Plaintiff's section 1681e(b) claim because (1) it did not have reason to doubt "the reliability of [Citibank,] a reputable source," and therefore acted reasonably in relying upon it for information, and (2) Plaintiff did not plead any facts showing that Defendant "furnished a consumer report about him to an identifiable third party for the purpose of establishing his eligibility for credit, employment, insurance, or the like." (Def. Mot. 6–7.) In addition, Defendant argues that the Court should dismiss Plaintiff's section 1681i claim because (1) he does not allege that the Citibank Tradeline is inaccurate, and (2) Defendant was not obligated to verify the validity of the Citibank Tradeline. (*Id.* at 8.)

Plaintiff argues that the Court should deny Defendant's motion to dismiss his section 1681e(b) claim because (1) Defendant had reason to doubt the reliability of the credit information supplied by Citibank after Plaintiff contacted Defendant to notify it of the inaccuracy, and (2) "even without evidence that a particular third party was supplied with ... a consumer report, failing to take reasonable measures to assure the accuracy of such credit information constitutes an injury in fact." (Pl. Opp'n to Def. Mot. ("Pl. Opp'n") 2–3, Docket Entry No. 22.) In addition, Plaintiff argues that the Court should dismiss the motion as to his section 1681i claim because he has "proven" that, *inter alia*, his credit file contained inaccurate information, he notified Defendant that the information was inaccurate, and Defendant failed to conduct a reasonable reinvestigation. (*Id.* at 3.) Plaintiff also argues that "the validity of the [Citibank Tradeline] is not in dispute here," rather, the relevant question is whether Defendant failed to pursue a reasonable reinvestigation into the accuracy of the information on Plaintiff's credit report. (*Id.* at 5.)

### i. Section 1681e(b)

Section 1681e(b) of the FCRA imposes a duty on consumer reporting agencies "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 104 (2d Cir. 1997) (quoting same); *Gorman v. Experian Info. Sols., Inc.*, No. 07-CV-1846, 2008 WL 4934047, at \*4 (S.D.N.Y. Nov. 19, 2008) ("[T]he FCRA requires that consumer reporting agencies ... 'follow reasonable procedures to assure maximum possible accuracy of the information' contained in the consumer report." (quoting 15 U.S.C. § 1681e(b))). In order to succeed on a claim under section 1681e(b), a plaintiff must show that:

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 24 of 50

Khan v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2019)

(1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Gestetner v. Equifax Info. Servs., LLC*, No. 18-CV-5665, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019) (quoting *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 330 (D. Conn. 2009)); *see also Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, at *8 (S.D.N.Y. June 22, 2016) (same); *Selvam v. Experian Info. Sols., Inc.*, No. 13-CV-6078, 2015 WL 1034891, at *3 (E.D.N.Y. Mar. 10, 2015) (same); *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010) (same) (quoting *Gaft v. Mitsubishi Motor Credit of Am.*, No. 07-CV-527, 2009 WL 3148764, at *9 (E.D.N.Y. Sept. 29, 2009)).

"[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 209 (D. Conn. 2013) (quoting *Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127, 134–35 (D. Conn. 2007)); *see also Adams*, 620 F. Supp. 2d at 330 (same) (quoting *Houston v. TRW Info. Servs., Inc.*, 707 F. Supp. 689, 691 (S.D.N.Y. 1989)); *Gorman*, 2008 WL 4934047, at *4 (same); *Collins*, 494 F. Supp. 2d at 135 ("Every circuit to consider the question has agreed that this threshold showing [of inaccuracy] is fundamental to the success of a claim under § 1681e(b)." (collecting cases)).

**\*3** Although the Second Circuit has yet to address the issue, "[t]he overwhelming weight of authority holds that a credit report is inaccurate ... either 'when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.' " *Wenning*, 2016 WL 3538379, at *9 (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)); *see also Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 141–42 (E.D.N.Y. 2017) ("[T]his Court finds that the more flexible approach mandated by the materially misleading standard is appropriate, and provides a method of evaluating compliance with the FCRA that is more closely aligned than its rigid counterpart with the statute's purpose of addressing the serious problem in the credit reporting industry ... of inaccurate or *misleading* information." (citation and internal quotation marks omitted)); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) ("A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." (internal alterations, citation, and quotation marks omitted)); *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008) ("[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.").

### ii. Section 1681i

Section 1681i sets out procedures consumer reporting agencies must follow to investigate disputes as to the accuracy of reported information. *See* 15 U.S.C. § 1681i. These procedures include reinvestigating a consumer's record within a reasonable period of time after a consumer "directly conveys" a dispute as to the "completeness or accuracy of an item on his credit report" to the consumer reporting agency. *Podell*, 112 F.3d at 101 (citing 15 U.S.C. § 1681i(a)); *see also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("If a dispute is filed with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate." (citing 15 U.S.C. §§ 1681i(a)(1)(A), 1681s–2(b))). Section 1681i states, in relevant part, that if a consumer notifies a consumer reporting agency — either directly or indirectly — of a dispute as to the accuracy of any item of information contained in his file, within thirty days of notification, the consumer reporting agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A); *see Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013)

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 25 of 50

Khan v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2019)

(quoting same). What constitutes a "reasonable" reinvestigation depends on the circumstances of the allegations. *Id.* (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010)). "Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995).

Similar to a section 1981e(b) plaintiff, "a plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate." *Gestetner*, 2019 WL 1172283, at *2 (quoting *Jones*, 982 F. Supp. 2d at 272–73); *see also Neclerio*, 983 F. Supp. 2d at 218 (same); *Jones*, 982 F. Supp. 2d at 272–73 ("Courts evaluating whether a [credit reporting agency] failed to conduct a reasonable reinvestigation look to whether there were in fact inaccuracies in the credit report."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) ("Although ...15 U.S.C. § 1681i ... does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts ... have imposed such a requirement."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("[T]he weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail."); *Crump v. Carrington Mortg. Serv., LLC*, No. 18-CV-2302, 2019 WL 118490, at *3 (N.D. Ill. Jan. 7, 2019) ("To state a claim under § 1681e(b) or § 1681i(a), [a plaintiff] must allege that her consumer report included inaccurate information."); *Fillmore v. Equifax Info. Servs., LLC*, No. 16-CV-1042, 2017 WL 4276542, at *2 (W.D. Tex. Sept. 26, 2017) (stating that section 1681i(a) "require[s] [a p]laintiff to prove, as a threshold matter, that an account is inaccurately reporting"). "This rule is based on both the purpose of the FCRA, 'to protect consumers against the compilation and dissemination of *inaccurate* credit information,' and the fact that 'it is difficult to see how a plaintiff could prevail on a claim for damages under § 1681i without a showing[ ] that the disputed information disclosed by the credit agency was, in fact, inaccurate.' " *Neclerio*, 983 F. Supp. 2d at 218.

### iii. Plaintiff fails to allege that the information Defendant reported about him is inaccurate

**\*4** Plaintiff fails to state a claim pursuant to sections 1681e(b) and 1681i because he has not alleged facts showing that the information that Defendant reported about him is inaccurate. *Gestetner*, 2019 WL 1172283, at *2 (explaining that under both section 1681e(b) and section 1681i, a plaintiff must allege that the disputed information is inaccurate). Plaintiff alleges that Defendant "prepared and issued credit reports concerning Plaintiff which include inaccurate information." (Compl. ¶ 10.) He states that "Citibank agreed to remove and/or delete the [Citibank Tradeline]," (*id.* ¶ 11), that Defendant reported the Citibank Tradeline as "paid and/or charged off," (*id.* ¶ 12), and continued to do so even after he informed Defendant of the Citibank Settlement, (*id.* ¶¶ 13, 15). However, Plaintiff does not state facts demonstrating that Defendant's report about Plaintiff was inaccurate, either because it is patently incorrect or because it is misleading in such a way and to such an extent that it can be expected to have an adverse effect. *Wenning*, 2016 WL 3538379, at *9 (stating that "[t]he overwhelming weight of authority holds that a credit report is inaccurate ... either 'when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.' " (quoting *Dalton*, 257 F.3d at 415)). Plaintiff does not explain how or why the Citibank Settlement rendered Defendant's report — which indicates that the Citibank Tradeline is "paid and/or charged off" — inaccurate. (Compl. ¶ 12.) Accordingly, the Court dismisses Plaintiff's FCRA claims. *See Henry v. Flagstar Bank, FSB*, No. 16-CV-1504, 2019 WL 1471267, at *2 (E.D.N.Y. Mar. 31, 2019) (dismissing FCRA claim because the plaintiffs' allegation that the defendant "intentionally ... reported false, negative information" about the plaintiffs was a "formulaic recitation of the elements of a cause of action" and insufficient to state a claim because the plaintiff did not allege "what information [the defendant] allegedly reported, to whom, why it was allegedly false, or any other information that could support such a claim"); *Gestetner*, 2019 WL 1172283, at *2 (dismissing section 1681e(b) and section 1681i claims because "[a]bsent from the complaint ... [were] any factual allegations explaining why having multiple delinquency dates listed ... necessarily makes the first two false" and that plaintiff's "conclusory statements" as to inaccuracies could "not survive a motion to dismiss" because the complaint lacked "factual enhancement"); *Tom Chen v. Vertical Screen, Inc.*, No. 17-CV-0938, 2019 WL 3704836, at *3 (W.D. Wash. Aug. 28, 2017) (dismissing the complaint because allegation that "the report was inaccurate because it stated that [the plaintiff's] charges were 'dismissed' instead of stating that they were 'dismissed with prejudice' " was "insufficient to give rise to an inference that the report was 'patently incorrect' or 'materially misleading' "); *see also Gauci v. Citi Mortg.*, No. 11-CV-1387, 2012 WL 1535654 (C.D. Ca. Apr. 30, 2012) ("[U]nder the FCRA, a credit reporting agency's job is to correctly report information furnished by the creditor, and credit reporting agencies are not supposed to adjudicate

a consumer-creditor dispute in order to issue credit reports. When a credit reporting agency correctly reports the information furnished by the creditor, the credit report is considered as 'accurate' within the meaning of the FCRA, even when there is an ongoing dispute as to the validity of the debt."); *Molton v. Experian Info. Sols., Inc.*, No. 02-CV-7972, 2004 WL 161494, at *6 (N.D. Ill. Jan. 21, 2004) (finding that the plaintiff could not establish a section 1681i claim as "no reasonable investigation on the part of [defendant] could have uncovered any inaccuracy in [the plaintiff's credit] report because there was never any factual deficiency in the report" — even though the plaintiff "settled the account with a collection agency," the statement on her credit report was "accurate").

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses the Complaint, but grants Plaintiff leave to file an amended complaint with thirty (30) days of the date of this Memorandum and Order.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2019 WL 2492762

---

### Footnotes

1    The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

---

**End of Document**                                                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1291533

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Scott LESSON, Plaintiff,

v.

Jane DOE / State Trooper, Defendant.

1:25-cv-00188 (AMN/TWD)

|

Signed May 5, 2025

**Attorneys and Law Firms**

SCOTT LESSON, Saratoga County Jail, 6010 County Farm Road, Ballston Spa, New York 12020, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

## I. INTRODUCTION

**\*1** On February 10, 2025, *pro se* plaintiff Scott Lesson ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against an unknown New York State Trooper. Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 4, 6.

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on March 26, 2025, recommended that the Complaint be dismissed with leave to amend. Dkt. No. 6 ("Report-Recommendation"). Magistrate Judge Dancks advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 7-8. [1] No party has filed objections to the Report-Recommendation and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at \*1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself

that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

**\*2**   "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Dancks determined that Plaintiff's allegations failed to set forth a claim for excessive force, as Plaintiff did not identify what force the unidentified state trooper purportedly used against him, nor how it was excessive. Dkt. No. 6 at 5-6. Magistrate Judge Dancks also found that Plaintiff's allegations failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. *Id.* at 4-5. As a result, Magistrate Judge Dancks recommended that the Complaint be dismissed with leave to amend. *Id.* at 6-7. The Court agrees with Magistrate Judge Dancks' findings and recommendations for the reasons set forth in the Report-Recommendation. Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 6, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; [2] and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules. [3]

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1291533

## Footnotes

1     Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2     As set forth in the Report-Recommendation, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Dkt. No. 5 at 6–7.

3     The Clerk shall also provide Plaintiff, at both his address of record and the future address he provided, Dkt. No. 2, with copies of all unreported decisions herein.

**End of Document**                                                                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1430467

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Florence OGBON, Plaintiff,

v.

BENEFICIAL CREDIT SERVICES, INC. et al., Defendants.

No. 10 Civ. 3760(PAE).

|

April 8, 2013.

*OPINION & ORDER*

PAUL A. ENGELMAYER, District Judge.

**\*1** Plaintiff Florence Ogbon brings this action against defendants Trans Union, LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law §§ 380 *et seq.* Ogbon also asserts common law claims of defamation and intentional and negligent infliction of emotional distress. Defendants move for summary judgment. For the reasons that follow, that motion is granted.

## I. Background

### A. Local Rule 56.1

The Court's account of the facts is based on the record evidence.[1] These facts are properly treated here as undisputed, because Ogbon, who is represented by counsel, failed to comply with Local Rule 56.1. Under that rule, the moving party must submit a statement of "the material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. Local Rule 56.1(a). Defendants complied with this obligation, identifying admissible evidence sufficient to support each asserted fact. *See* Dkt. 140 ("Def.56.1"). In response, the non-moving party, here, Ogbon, must submit a responsive statement, which includes "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." S.D.N.Y. Local Rule 56.1(b). Notably, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." S.D.N.Y. Local Rule 56.1(c). Additionally, "[e]ach statement by the movant or opponent ... controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed.R.Civ.P. 56(c)." S.D.N.Y. Local Rule 56.1(d).

Ogbon's Local Rule 56.1 statement completely fails to comply with these requirements: Its numbered paragraphs do not correspond to defendants' statement and are utterly unresponsive to that statement; it lacks citation to a single piece of documentary evidence; and it consists of conclusory statements unsupported by any record evidence. *See* Dkt. 61 ("Pl. 5 6.1"). Ogbon's failure is particularly egregious in light of the fact that the Court pointedly drew the requirements of Local Rule 56.1 to Ogbon's counsel's attention at the conference held immediately prior to the filing of this motion:

> Let me just state to all of you [that] there is a distinct procedure in the local rules here consistent with my individual practices with regard to 56.1 statements. Mr. Okocha, with respect, I am looking at you

in particular because there have been issues with regard to noncompliance with the Court's rules, and I don't want you to inadvertently hurt your client by not complying here. [A] party is required to submit a compliant 56.1 statement and submit an opposition to the other side's 56.1 statements. A common issue that I have seen in many cases involves the moving party making an appropriate statement in a 56.1 about a factual proposition backed up by evidence and then the other party in its opposition simply denying it without any factual reference point. The case law is crystal clear that that is insufficient, that a general unsubstantiated denial functions as an admission of the fact that it is responsive to.

**\*2**  Dkt. 167 (Transcript of January 4, 2013 Pre–Motion Conference ("Tr.")).

As the Court emphasized to Ogbon's counsel at the pre-motion conference, Ogbon's failure to comply with the requirements of Local Rule 56.1 "permits the [C]ourt to conclude that the facts asserted in [defendants'] statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.,* 584 F.3d 412, 418 (2d Cir.2009) (citing *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998)). "In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *Id.* (citing *Millus v. D'Angelo,* 224 F.3d 137, 138 (2d Cir.2000)).

With that prelude, the Court proceeds to recite the undisputed facts of the case.

### B. Factual Background

#### 1. The Theft of Ogbon's Identity

Ogbon is a native of Nigeria, who attended college in the United States from 1978 to 1984. Ogbon Dep. 25, 224–25. [2] In 1978, Ogbon was issued a Social Security Number. *Id.* at 14, 234. In 1984, after receiving a degree from Southern University, Ogbon returned to Nigeria. *Id.* at 24–27. She remained in Nigeria until June 2007, when she returned to the United States. *Id.* at 24.

Upon returning to the United States in 2007, Ogbon learned that her identity had been stolen. *Id.* at 45. On May 28, 2008, she filed a complaint with the local police in Minnesota, where she was living at the time, claiming that an unknown person had been using her name and Social Security Number for 10 years to obtain tax refunds, open credit and bank accounts, and file for bankruptcy twice. *Id.* at 23–24, 45–48; *id.* Ex. 3. In February 2009, Ogbon, then living in New York, filed another identity theft complaint, this time with local police in Georgia. *Id.* at 52–54; *id.* Ex. 5. Ogbon alleged that Veronica Ilenre, a former friend and neighbor from Ogbon's previous stay in the United States, *see id.* at 54–55, 65, 237–38, had used Ogbon's name to incur debts, obtain a mortgage, file tax returns, and declare bankruptcy, *id.* at 38, 44–45, 76–77.

In May 2011, Ilenre was arrested in Georgia on several charges of identity theft. *Id.* Ex. 9. In 2012, Ilenre pled guilty in Georgia state court and was sentenced to a term of work release and probation. *Id.* Ex. 11. Ilenre was ordered to pay $50,000 in restitution to Ogbon, *id.,* an amount which Ogbon has been receiving in installments, *id.* at 74.

#### 2. Ogbon's Interactions with Trans Union

Trans Union is a "consumer reporting agency" as defined by the FCRA. Reger Decl. ¶ 2. It regularly receives information from creditors ("Furnishers"), compiles that information to create consumer credit reports, and makes these reports available to clients who are engaged in credit-related transactions. *Id.* ¶ 4. Trans Union has credit files on approximately 210 million customers and collects information from more than 85,000 Furnishers, who report credit information to Trans Union on a monthly basis. *Id.* ¶¶ 6–7, 9. Trans Union has an incentive to accurately report consumer information, and it contractually requires that Furnishers report only accurate information. *Id.* ¶¶ 10, 13–15. Trans Union is a member of the Consumer Data Industry Association (the "CDIA"), a trade association through which credit reporting agencies share consumer information. *Id.* ¶ 16.

**\*3** On May 23, 2008, Ogbon contacted Equifax, another credit reporting agency, to request that an initial fraud alert be placed on her credit file. *Id.* ¶ 47. That same day, Equifax notified Trans Union through the CDIA Fraud Exchange of Ogbon's request. *Id.* ¶ 48. Trans Union responded by adding an initial fraud alert to Ogbon's credit file, suppressing her credit file from promotion, and notifying her by letter of this action and enclosing a Fraud Bill of Rights. *Id.* ¶ 49.

On February 3, 2009, Ogbon contacted Trans Union by telephone to notify Trans Union that she had been a victim of identity theft and to request a copy of her credit report. Ogbon Dep. 242; Reger Decl. ¶ 53; *id.* Ex. A. In response to Ogbon's inquiry, Trans Union added a fraud alert to her file, changed the name on her credit file to include her middle name, and deleted the telephone number and a previous address associated with her file. Reger Decl. ¶ 54; *id*. Ex. B. Trans Union also notified Ogbon that the mailing address she provided did not match the information in Trans Union's file, and, on February 3, 2009, sent Ogbon a letter requesting that she provide acceptable proof of her current address. *Id.* Ex. A; Ogbon Dep. 243–47. The letter specified the acceptable forms of proof of address and advised Ogbon of the proper procedure for contacting Trans Union to request that a valid identity theft report from a law enforcement agency—such as the 2008 Minnesota report or the 2009 Georgia report—be added to her file. Reger Decl. Ex. A. The next day, February 4, 2009, Ogbon contacted Trans Union again, and was again advised that she needed to provide proof of her identification and address. *Id.* ¶ 55.

On February 10, 2009, Trans Union received correspondence from Ogbon enclosing a number of documents, including her Social Security Card, which constituted acceptable proof of her Social Security Number; however, the other documents did not provide acceptable proof of her address. Reger Decl. ¶¶ 56–57; *id.* Ex. C; Ogbon Dep. 247–56. Accordingly, on February 12, 2009, Trans Union sent Ogbon another letter setting forth four reasons why her submissions were deficient, and again explaining the acceptable forms of proof of address. Reger Decl. ¶ 58; *id.* Ex. D; Ogbon Dep. 258–59.

On March 2, 2009, Trans Union received additional documents from Ogbon, including her New York State learner's permit and a bill from ConEdison, addressed to her and her son-inlaw. Reger Decl. ¶ 59, *id.* Ex. E; Ogbon Dep. 262–65. The learner's permit listed Ogbon's address as "10 Cleveland Pl. 3, Yonkers, N.Y. 10710"; the Con Edison bill omitted the apartment number, listing her address as "10 Cleveland Pl., Yonkers, N.Y. 10710," although it also mentions that service was delivered to "10 Cleveland Plac [sic] 3." Reger Decl. Ex. E. Because of this minor discrepancy in the apartment number (or lack thereof), Trans Union deemed Ogbon's submission insufficient proof of her address. *Id.* ¶ 59. When Ogbon called Trans Union on March 13, 2009, Trans Union once again notified her that her proof of address was deficient. *Id.* ¶ 60. On March 14, 2009, Trans Union received another notice from CDIA Fraud Exchange, and accordingly updated the fraud alert on Ogbon's file. *Id.* ¶ 61; *id.* Ex. F.

**\*4** Trans Union had no further communication with Ogbon until Ogbon, represented by counsel, filed this lawsuit, on May 6, 2010. *Id.* ¶ 62. After Ogbon's counsel provided Trans Union with the 2008 Minnesota police report and the 2009 Georgia police report that Ogbon had filed, Trans Union processed the reports pursuant to its standard procedures and removed all disputed information from Ogbon's credit file. *Id.* ¶¶ 63–64. Trans Union's credit file for Ogbon currently lists her accounts as satisfactory and includes an Extended Fraud Alert, which will remain in her file until July 2018. *Id.* ¶ 65; *id.* Ex. G.

### 3. Ogbon's Interactions with Experian

Like Trans Union, Experian is a consumer reporting agency as defined by the FCRA, which regularly receives information from Furnishers and compiles that information to create consumer credit reports. Scott Decl. ¶¶ 6–8. It also has files on more than 200 million consumers and employs procedures to ensure the accuracy of these files. *Id.* ¶¶ 9–23.

On May 23, 2008, Experian was notified by another credit reporting agency that Ogbon had contacted them regarding possible identity theft. *Id.* ¶ 25. The same day, Experian sent Ogbon a letter notifying her that a security alert had been placed in her file, explaining how she could request a copy of her credit report, and providing information about preventing identity theft. *Id.* & Ex. A; Ogbon Dep. 84–86. Ogbon did not make any contact with Experian until February 2, 2009, [3] when she called Experian to request a copy of her credit report and to add a security alert to her report. Scott Decl. ¶ 27; Ogbon Dep. 304. The same day, Experian sent Ogbon a letter again notifying her that a security alert had been placed in her file, and explaining that she would

have to provide sufficient proof of her identity, including her Social Security Number, in order to obtain a free credit report or to dispute information in her file. Scott Decl. ¶ 27; *id.* Ex. B.

On March 2, 2009, Experian received a package from Ogbon enclosing her New York State learner's permit and Con Edison bill. Scott Decl. ¶ 28; *id.* Ex. C. That package did not include proof of her Social Security Number, nor did it contain any information regarding Ogbon's desired relief. *Id.* ¶ 28; *id.* Ex. C. On March 6, 2009, Experian sent Ogbon a letter again asking her to provide sufficient identifying information, including her Social Security Number. *Id.* ¶ 29. On March 14, 2009, Ogbon called Experian to request a free copy of her credit report. *Id.* ¶ 31. Experian again informed her of the need to provide information confirming her identity, and on the same day sent her another letter to that effect. *Id.; id.* Ex. D. Ogbon did not respond. *Id.* ¶ 32; Ogbon Dep. 305.

On September 12, 2009, Ogbon's counsel sent a letter to Experian styled as a "Validation Letter/Cease and Desist Letter/Dispute and Investigation and Re-investigation Letter and Intent to Sue Letter." Scott Decl. Ex. E. The letter states that "if any negative information is placed on my client's Credit Reports by your agency after receipt of this notice, this will cause us to file lawsuit against you and your organization/firm." *Id.* It also demands that "[i]f any negative report is already place [sic] in my client's credit file you should instruct that it be deleted immediately." *Id.* Although the letter lists Ogbon's name and address, it does not provide any other information confirming her identity, such as her Social Security Number, and the letter repeatedly refers to Ogbon using the pronoun "he." *Id.* Further, the bank account numbers referenced in the letter did not match those that appeared in Ogbon's credit file. Scott Decl. ¶ 33. Accordingly, on September 24, 2009, Experian replied by letter to Ogbon's counsel, informing him that Experian had been unable to determine what relief Ogbon was seeking, and notifying him that, under the FCRA, Experian could not furnish Ogbon's credit report without proper identifying information. *Id.* ¶ 34; *id.* Ex. F (citing § 1681h of the FCRA). Neither Ogbon nor her counsel responded to this letter until the filing of this case. *Id.* ¶¶ 35–36. Once Ogbon's counsel provided Experian with Ogbon's identification information and information about the nature of the dispute, Experian removed all information from Ogbon's file that she claimed resulted from fraudulent activity. *Id.* ¶ 37.

### C. Procedural History

**\*5** On May 6, 2010, Ogbon filed her original Complaint, naming Trans Union, Experian, Equifax Information Services, Inc. ("Equifax"), Beneficial Credit Services, Inc. ("Beneficial"), and Bank of America, N.A. as defendants. Dkt. 1. Four of these defendants—Beneficial had not been served—moved to dismiss the complaint for failure to state a claim. Dkt. 10, 17.

On February 1, 2011, the Hon. George B. Daniels, who was previously assigned to the case, granted that motion, but granted Ogbon leave to file a motion to amend her complaint. Dkt. 34. On March 1, 2011, Ogbon filed a motion to amend. Dkt. 39. Bank of America opposed that motion, Dkt. 43, and Judge Daniels denied as futile Ogbon's motion to amend as to Bank of America, Dkt. 61. Trans Union, Experian, and Equifax did not oppose the motion to amend. On October 11, 2011, Ogbon filed her Amended Complaint, bringing claims against Trans Union, Experian, Equifax, and Beneficial. Dkt. 69. [4]

On November 28, 2011, Ogbon filed a Second Amended Complaint, bringing additional claims and naming eight additional defendants. Dkt. 76. On December 23, 2011, several defendants moved to dismiss the Second Amended Complaint. Dkt. 79. On January 13, 2012, Ogbon filed an untimely opposition. Dkt. 90. [5] On September 4, 2012, the Court granted defendants' motion to dismiss the Second Amended Complaint, finding that Ogbon had directly violated an Order given by Judge Daniels—at a September 13, 2011 status conference—regarding the deadline for adding parties and claims. *See* Dkt. 117, at 3. Accordingly, the Court dismissed the eight additional defendants from the case and restored the Amended Complaint as the operative pleading.

In the ensuing discovery period, Ogbon's counsel was habitually delinquent in complying with discovery obligations and court orders, requiring the Court's repeated intervention. *See, e.g.,* Dkt. 122, 128, 131; *see also* Dkt. 75. On January 4, 2013, the Court held a pre-motion conference. At that conference, the Court raised several outstanding discovery disputes, but the parties agreed that these issues would not materially affect the anticipated summary judgment motion, and therefore could be addressed after

the resolution of that motion. Dkt. 136; *see* Tr. 7–12, 17. As noted, the Court gave the parties clear instructions at that conference regarding the applicable rules governing summary judgment motions. *Id.* at 16.

On February 1, 2013, Trans Union and Experian filed a joint motion for summary judgment. Dkt. 138–146. On February 27, 2013, Ogbon voluntarily dismissed her claims against Equifax. Dkt. 149. On March 11, 2013, Ogbon timely filed a memorandum of law in opposition to defendants' motion, attaching a Local Rule 56.1 Statement and the Declaration of Florence Ogbon. Dkt. 152. Ogbon's submissions were rejected by the Court's electronic filing system, however. On March 13, 2013, Ogbon attempted to correct the docketing error; in doing so, however, Ogbon filed materially different papers than she had on March 11, 2013, which had been the deadline for her opposition. On March 15, 2013, defendants called this discrepancy to the Court's attention by letter; the Court struck the untimely documents from the record and directed Ogbon to refile her opposition papers in exactly the form they had been submitted on March 11. Dkt. 157. On March 16, 2013, Ogbon did so. Dkt. 158–60. On March 18, 2013, Ogbon requested leave to supplement her opposition papers with the additional items added on March 13; the Court denied that request, finding that Ogbon's failure to timely file these materials was not a product of good faith excusable neglect, but rather was consistent with a pattern of disregard for Court orders and deadlines. Dkt. 161. On March 19, 2013, defendants filed their reply papers. Dkt. 163, 166.

## II. Applicable Legal Standard

**\*6** A court should grant summary judgment only when the submissions, taken together, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment absent as a matter of law." *Fed.R.Civ.P. 56(a).* The party moving for summary judgment bears the burden of demonstrating the absence of a material factual question; in making this determination, the court must view all facts "in the light most favorable" to the non-movant. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.,* 521 F.3d 130, 132 (2d Cir.2008). To survive a motion for summary judgment, the opposing party must establish a genuine issue of material fact by "citing to particular parts of materials in the record." *Fed.R.Civ.P. 56(c) (1).* "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir.2010) (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## III. Discussion

### A. FCRA Claims

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007). "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 474 (2d Cir.1995) (citing 15 U.S.C. §§ 1681*o* & 1681n); *see Okocha v. HSBC Bank USA, N.A.,* No. 08 Civ. 8650(MBP), 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010). Ogbon alleges that defendants violated several duties under the FCRA. The Court addresses these claims in turn.

### 1. The § 1681e(b) Claim

Ogbon's first claim is that defendants violated their duties under § 1681e, which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *see Podell v. Citicorp Diners Club., Inc.,* 112 F.3d 98, 104 (2d Cir.1997).

"To succeed on a claim under this section, a plaintiff must establish that: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported

inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Gorman v. Experian Info. Solutions, Inc.,* No. 07 Civ. 1846(RPP), 2008 WL 4934047, at \*4 (S.D.N.Y. Nov. 19, 2008) (quoting *Whelan v. Trans Union Credit Reporting Agency,* 862 F.Supp. 824, 829 (E.D.N.Y.1994)); *see Houston v. TRW Info. Servs., Inc.,* No. 88 Civ. 186(MEL), 1989 WL 59850, at \*1 (S.D.N.Y. May 2, 1989), *aff'd* 896 F.2d 543 (2d Cir.1990)). Even if the information contained in the challenged credit report is inaccurate, "a credit reporting agency is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." *Whelan,* 862 F.Supp. at 829 (citing *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991); *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51 (D.C.Cir.1984)); *see Gorman,* 2008 WL 4934047, at \*4.

**\*7** "The standard for evaluating the reasonableness of an agency's procedures is what a reasonably prudent person would do under the circumstances." *Whelan,* 862 F.Supp. at 831 (citing *Houston v.. TRW Info. Servs., Inc.,* 707 F.Supp. 689, 693 (S.D.N.Y.1989) (additional citations omitted)). "Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.' " *Gorman,* 2008 WL 4934047, at \*4 (citing *Cahlin,* 936 F.2d at 1156). However, "[t]o defeat a motion for summary judgment on a § 1681 e(b) claim, a plaintiff must minimally present *some* evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Whelan,* 862 F.Supp. at 831 (citation omitted) (emphasis added).

Summary judgment is merited in favor of both Trans Union and Experian here, because Ogbon has adduced no evidence to suggest that either defendant failed to follow reasonable procedures in preparing her credit report. Ogbon argues only that, because there was an error, the procedures must have been unreasonable. But the FCRA does not impose such strict liability. *Whelan,* 862 F.Supp. at 829; *see Sarver v. Experian Info. Solutions,* 390 F.3d 969, 972 (7th Cir.2004) ("[A] mistake does not render the procedures unreasonable.").

Both Trans Union and Experian have provided detailed explanations of the procedures they utilize to ensure the accuracy of their credit reports. *See* Reger Decl. ¶¶ 4–46; Scott Decl. ¶¶ 11–23. Unfortunately, Ogbon's identity was stolen by Ilenre, who opened accounts and incurred debts using Ogbon's name and Social Security Number. But Ogbon has identified no basis on which a jury could find that the defendants had a basis to question the accuracy of the reports it had received from Furnishers that Ogbon herself had incurred the debts in question. *See* Reger Decl. ¶¶ 33–38 (stating that the Furnishers who provided information regarding Ogbon are reliable sources of information and have no systemic problems with their respective procedures); *see also Sarver,* 390 F.3d at 972 (The FCRA "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures."). Under these circumstances, there is no genuine issue as to whether the defendants followed reasonable procedures. *See Podell,* 112 F.3d at 105 (affirming grant of summary judgment for credit reporting agency, finding that agency did follow reasonable procedures, *even though* it continued to report plaintiff's indebtedness after being advised by his creditors that this was in error, because agency also received subsequent reports from those same creditors reaffirming the debts: "[agency] was entitled to report [plaintiff's indebtedness], at least until it heard from him directly"). Summary judgment is therefore merited in favor of defendants on this claim. [6]

### 2. The § 1681i Claim

**\*8** Ogbon's second claim is that defendants violated their duty to reinvestigate disputed information. The FCRA provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation

> to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file....

15 U.S.C. § 168 11(a)(1)(A). Notwithstanding this duty, "a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer ... if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." § 168 11(a)(3)(A). "Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." *Casella,* 56 F.3d at 474. The operative question here is whether Ogbon ever provided defendants with sufficient indentifying information to investigate the disputed credit information, thereby triggering defendants' duty to reinvestigate.

As to Experian, Ogbon clearly did not. On May 23, 2008, having received notice from another credit reporting agency of the possible theft of Ogbon's identity, Experian sent Ogbon a letter detailing the identifying information it would need from her to send her a free copy of her credit report. Scott Decl. ¶ 25; *id.* Ex. A; Ogbon Dep. 84–86. Experian sent similar letters to Ogbon, in response to her inquiries, on February 2, 2009, March 6, 2009, and March 14, 2009. Scott Decl. ¶¶ 27, 29, 31; *id.* Exs. B, D. Although Ogbon contacted Experian by phone on numerous occasions, the only identifying information she ever sent to Experian lacked proof of her Social Security Number. *Id.* ¶ 28; *id.* Ex. C. Nor did the "Cease and Desist" letter sent by Ogbon's counsel contain sufficient identifying information for Experian to investigate Ogbon's claim. *Id.* Ex. E. When Experian responded to Ogbon's counsel requesting such information, it received no response. *Id.* ¶¶ 35–36. Because of Ogbon's failure to provide her Social Security Number (and to specify the precise nature of her dispute), it was entirely reasonable for Experian to decline to reinvestigate Ogbon's claim until it received such information. *See Anderson v. Trans Union,* 405 F.Supp.2d 977, 984 (W.D.Wis.2005) ("Given [plaintiff's counsel's failure to provide an accurate Social Security Number] and defendant's duty under §§ 1681(b) and 1681e(b) to follow reasonable procedures to insure both the accuracy and confidentiality of plaintiff's credit information, defendant's prompt decision to confirm plaintiff's social security number was both reasonable and prudent. If any unreasonable action was taken in this case, it was the failure of plaintiff's attorney to provide prompt confirmation of plaintiff's social security number ."). Summary judgment is therefore merited in Experian's favor.

**\*9** Like Experian, Trans Union repeatedly notified Ogbon of the need to provide identifying information and the proper means by which to do so. Reger Decl. ¶¶ 49, 55, 58, 60; *id.* Exs. A, D. Ogbon's claim against Trans Union presents a slightly closer question, however, because Ogbon provided Trans Union with more identifying information: On February 10, 2009, she sent Trans Union a copy of her Social Security Card, *see* Reger Decl. Ex. C, and on March 2, 2009, she sent Trans Union her New York State learner's permit and a bill from ConEdison, both of which bore her home address, *see id.* Ex. E. Trans Union still found this proof of her identity insufficient, however, because of a minor discrepancy in the home address listed on these two documents—one included the apartment number, one did not. *Id.* ¶ 59.

Although the Court can understand Ogbon's frustration with Trans Union's extreme attention to detail, it is mindful that Trans Union has a duty to protect the confidentiality and security of Ogbon's information. *See* 15 U.S.C. § 1681(b) ("It is the purpose of [the FCRA] to require that consumer reporting agencies adopt reasonable procedures ... with regard to the confidentiality ... of [consumer] information."); *cf.* 15 U.S.C. § 1681h(a) (1) ("A consumer reporting agency shall require, as a condition of making the disclosures required under section 1681g of this title, that the consumer furnish proper identification."). And upon receiving Ogbon's March 2, 2009 correspondence, Trans Union did not rebuff, unexplained, her efforts to dispute the charges; rather, it notified her once again that her proof of address was deficient and explained why. Reger Decl. ¶ 60. This was a readily correctable problem. Moreover, Trans Union was particularly justified in proceeding with an abundance of caution when trying to confirm Ogbon's address (and thus identity), because her previous submission to Trans Union had contained documents bearing three different home addresses. *Id.* Ex. C; *see Singletary v. Equifax Info. Servs., LLC,* No. 2:09–CV–0489–SLB, 2012 WL 4329273, at \*9 (N.D.Ala. Sept. 18, 2012) (credit reporting agency's policy of insisting on exact matching of consumer's full address does not require more than the minimal personal information necessary to properly identify the consumer (citing 12 C.F.R. § 1022.123 (regulation setting forth appropriate proof of identity))); *Anderson,* 405 F.Supp.2d at 984 (given defendant's duty "to

follow reasonable procedures to insure both the accuracy and confidentiality of plaintiff's credit information, defendant's prompt decision to confirm plaintiff's social security number was both reasonable and prudent"). Finally, even assuming that Ogbon had sufficiently proven her identity, Trans Union had very little data to work with, because Ogbon's correspondence never provided concrete information as to which charges she sought to dispute. *See Petty v. Equifax Info. Servs., LLC,* No. CCB–10–694, 2010 WL 4183542, at *3 (D.Md. Oct. 25, 2010) ("The [FCRA] requires that a consumer notify a [credit reporting agency] of the existence and nature of a dispute for an obvious reason: Without notice of a consumer's dispute, including an explanation of why a consumer believes his or her report is inaccurate or incomplete, a CRA generally would not know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed inaccurate or incomplete."). For these reasons, summary judgment is also merited in Trans Union's favor. [7]

### 3. The § 1681g Claim

**\*10**  Ogbon's Amended Complaint briefly references § 1681g, which requires credit reporting agencies to "clearly and accurately disclose" to consumers "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). However, a condition precedent to the consumer reporting agency's making such a disclosure is that "the consumer furnish proper identification." § 1681h(a)(1). As noted in Part III(A)(2), *supra,* Ogbon failed to do so. Summary judgment is therefore merited in defendants' favor. [8]

### 4. The § 1681b(a) Claim

The Amended Complaint also makes passing reference to § 1681b(a), which specifies the only circumstances under which a consumer reporting agency may furnish a consumer's credit report. 15 U.S.C. § 1681b(a); *see also* § 1681e(a) (requiring that consumer reporting agencies "maintain reasonable procedures designed ... to limit the furnishing of consumer reports" to the permissible purposes listed in § 1681b, and outlining what these procedures must entail). "To prove a violation of section 1681b, a plaintiff must show that credit information was obtained for an impermissible purpose." *Stonehart v. Rosenthal,* No. 01 Civ. 651(SAS), 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2001); *see Perl v. Am. Express,* 12 Civ. 4380(ER), 2012 WL 2711270, at *2 (S.D.N.Y. July 9, 2012). Ogbon has failed to adduce any evidence that any entity obtained her credit information for an impermissible purpose. Indeed, she does not even address this claim in her opposition brief. Summary judgment is therefore merited in defendants' favor. [9]

### B. State Common Law Claims

Ogbon also asserts common law claims of defamation and intentional infliction of emotional distress.

### 1. Defamation

The FCRA provides that:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency ... based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). [10] Thus, defendants have "qualified immunity against defamation actions," which can only be overcome where plaintiff shows that defendants acted with malice or willful intent. *Houston,* 707 F.Supp. at 695; *see Whelan,* 862 F.Supp.

at 833–34;*see also Holmes v. Experian Info. Solutions, Inc.,* No. 11–4705–cv, 2013 WL 48692, at *2 (2d Cir. Jan. 4, 2013) (summary order) (holding that "FCRA preempts claims of negligence by consumer reporting agencies, allowing recovery only for malice or willfulness"); *Ross v. F.D.I. C.,* 625 F.3d 808, 814 (4th Cir.2010) ("Congress intended this section's general bar on defamation ... actions to be quid pro quo for providing full disclosure under the FCRA. The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.' " (citations omitted) (alteration in original)).

**\*11**  The FCRA does not define "malice," and circuit courts are split as to whether state or federal law governs the meaning of malice under § 1681h(e). *See Ross,* 625 F.3d at 815 (collecting cases). The Second Circuit has not weighed in, but several district courts in this circuit have applied federal law and defined malice by reference to the standard set forth in *N.Y. Times Co. v. Sullivan,* 376 U.S. 254 (1964). *See, e.g.,Adams v. Nat'l Eng'g Serv. Corp.,* 620 F.Supp.2d 319, 335 (D.Conn.2009); *Cadet v. Equifax Credit Servs.,* No. 05–CV–4843, at *5 (E.D.N.Y. Jan. 18, 2008); *Frost v. Experian,* No. 98 Civ. 2106(JGK) (JCP), 1999 WL 287373, at *6 (S.D.N.Y. May 6, 1999). Under that standard, the question is whether the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co.,* 376 U.S. at 280. Measured by any standard, however, Ogbon's claim fails, because she has failed to adduce any evidence that defendants made false statements with malice or willful intent to injure her. As noted, defendants received information from Furnishers, whom defendants reasonably believed to be reliable sources, that Ogbon had incurred various debts. Defendants had no reason to doubt the accuracy of this information and Ogbon failed to provide defendants with sufficient information to confirm her identity and identify the nature of her dispute. Summary judgment is therefore merited in defendants' favor.

### 2. Negligent and Intentional Infliction of Emotional Distress

Defendants argue that Ogbon's claims for negligent and intentional infliction of emotional distress are preempted. Def. Br. 21–23. Although the FCRA preempts state law claims *"in the nature of* defamation, invasion of privacy, or negligence" absent a showing of malice or willfulness, it does not explicitly mention of common law claims of negligent or intentional infliction of emotional distress. 15 U.S.C. § 1681h(e) (emphasis added). At least one district court in this circuit has therefore held that defendants are not entitled to qualified immunity from such claims. *See Adams,* 620 F.Supp.2d at 335;*see also Davis v. Md. Bank,* No. 00–04191, 2002 WL 32713429, at *14 (N.D. Cal. June 19, 2002) (intentional infliction of emotional distress claim not preempted by § 1681h(e)). The Court need not reach the preemption question, however, because Ogbon's claims are plainly deficient on the merits.

A claim of intentional infliction of emotion distress requires a showing of "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 121 (1993). Ogbon has not adduced any evidence that either defendant engaged in any extreme or outrageous conduct. As discussed, defendants acted reasonably in compiling credit information that they received from reliable Furnishers and refusing to reinvestigate Ogbon's claims until she provided sufficient information to verify her identity and inform defendants of the nature of her dispute. Moreover, Ogbon has adduced no evidence that either defendant acted with intent to cause her distress.

**\*12**  Ogbon's negligent infliction of emotional distress claim is similarly unavailing. Such a claim may be established by either a "bystander theory" [11] or the "direct duty theory:" [12] *Mortise v. United States,* 102 F.3d 693,696 (2d Cir.2006). Ogbon has adduced no evidence showing that any emotional distress she suffered stemmed from "either (I) physical injury or the threat of physical injury, or (2) breach of a special duty between [Ogbon] and defendant[s]." *Okocha,* 700 F.Supp.2d at 376. Accordingly, summary judgment is merited in defendants' favor on both of these claims.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of Court is directed to terminate the motion pending at docket number 138, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1430467

---

## Footnotes

1   This includes the Declaration of Angela Hamm in Support of Defendants' Joint Motion for Summary Judgment ("Hamm Decl.") (Dkt.144) and the exhibits attached thereto, including the Deposition of Florence Ogbon (Hamm Decl. Ex. 1) ("Ogbon Dep."), the Affidavit of Steven Reger and the exhibits attached thereto (Hamm Decl. Ex. 2) ("Reger Decl."), and the Declaration of Jason Scott and the exhibits attached thereto (Hamm Decl. Ex. 3) ("Scott Decl."); and the Declaration of Florence Ogbon ("Ogbon Decl.") (Dkt.162) and the exhibits attached thereto.

2   In her opposition brief, Ogbon argues that her own deposition testimony is inadmissible on this motion, because (1) defendants included only portions of the transcript of her deposition in the summary judgment record, and (2) Ogbon has not authenticated the transcript as reflecting her true testimony. These arguments are frivolous. First, defendants properly excerpted only those portions of the deposition transcript relevant to this motion; to the extent Ogbon believes that some other portion was relevant, she was at liberty to supplement the record in her opposition papers. Second, "[t]he fact that Plaintiff did not sign the deposition transcript does not ... make it inadmissible, as a deponent is required to sign the deposition transcript only if review of the transcript is requested before the deposition is completed and changes are made by the deponent." *Dore v. Wormley,* 690 F.Supp.2d 176, 178 n. 2 (S.D.N.Y.2010) (quoting *Merring v. Town of Tuxedo, N.Y.,* No. 07 Civ. 10381(CS), 2009 WL 849752, at *1 n. 7 (S.D.N.Y. Mar. 31, 2009)). Ogbon does not claim to have made such a request. Her deposition is admissible.

3   In her deposition, Ogbon equivocates as to whether she ever contacted Experian in 2008: "Q: When in 2008 did you [send a copy of your identity theft report to Experian]? A: I'm not sure of the dates specifically. I'm not sure of the dates. Let me not say. I don't want to tell lies, but I did. I'm not sure of the dates now. I can't give you the dates specifically." Ogbon Dep. 86–87. Ogbon has no record of any communications sent to Experian in 2008, *see id.* at 87, and Experian has no record of any such contact, *see* Scott Decl. ¶ 26.

4   On October 6, 2011, the case was reassigned to this Court. Dkt. 68.

5   On February 7, 2012, Ogbon settled her claims against Beneficial. Dkt. 101.

6   Ogbon also brings a claim under the parallel provision of the NYFCRA, which provides: "Consumer reporting agencies shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates." N.Y. Gen. Bus. Law § 380 j(e). Because the language of this statute is substantially similar to the parallel federal provision, it must be construed the same way. *Scott v. Real Estate Fin. Grp.,* 183 F.3d 97, 100 (2d Cir.1999). Accordingly, summary judgment is granted in defendants' favor on this claim.

7   Ogbon also brings a claim under the parallel provision of the NYFCRA, which provides: "If a consumer disputes any item of information contained in his file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall promptly re-investigate and record the current status of such information, unless it has reasonable grounds to believe that the dispute by the consumer is frivolous." N.Y. Gen. Bus. Law § 380–

f(a). Once again, the Court construes this statute in the same way as its similar federal analogue, and therefore grants summary judgment in defendants' favor on this claim. *Scott,* 183 F.3d at 100.

8    Ogbon does not resist this conclusion: She does not address this claim in her brief. It is therefore waived. *See Global Cross Estate Rep. v. Winnick,* No. 04 Civ. 2258(GEL), 2006 WL 2212776, at *23 (S.D.N.Y. Aug. 3, 2006); *First Capital Asset Mgmt. v. Brickellbush, Inc.,* 218 F.Supp.2d 369, 392–93 (S.D.N.Y.2002).

9    Defendants also argue that, even assuming Ogbon could establish liability on one or more of these claims, summary judgment is still merited because Ogbon has not adduced sufficient evidence of damages, is not entitled to punitive damages, and is not entitled to declaratory relief. *See* Def. Br. 17–21. Having found no triable issue of fact as to defendants' liability on Ogbon's FCRA and NYFCRA claims, the Court need not reach this argument.

10    Because defendants are "consumer reporting agencies," not "persons who furnish information to consumer reporting agencies," the broader preemption provision of 15 U.S.C. § 1681t(b)(1)(F) does not apply. *See Okocha v. HSBC Bank USA, N.A.,* 700 F.Supp.2d 369, 374–75 (S.D.N.Y.2010).

11    Under the bystander theory, "[a] plaintiff may recover for a purely emotional injury ... when: (1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.2006) (citing *Bovsun v. Sanperi,* 61 N.Y.2d 219, 230–31 (1984)).

12    "Under the 'direct duty' theory a plaintiff has a cause of action for negligent infliction of emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Mortise,* 102 F.3d at 696 (citing *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 504 (1983)).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 41 of 50

Thompson v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2467662
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Carlene THOMPSON, Plaintiff,

v.

EQUIFAX INFORMATION SERVICES LLC, Experian Information Solutions, Inc. and Trans Union, LLC, Defendants.

20-CV-6101 (RPK) (ST)

|

Signed February 24, 2022

**Attorneys and Law Firms**

Carlene Thompson, Amityville, NY, Pro Se.

Courtney Sophie Stieber, Seyfarth Shaw LLP, New York, NY, Brenda Beauchamp, Akerman LLP, New York, NY, for Defendant Equifax Information Services, LLC

Cealagh P. Fitzpatrick, Jones Day, New York, NY, for Defendant Experian Information Solutions, Inc.

Camille Renee Nicodemus, Cayla Mary Irlbeck, Pro Hac Vice, Schuckit & Associates, P.C., Zionsville, IN, for Defendant TransUnion, LLC.

## REPORT AND RECOMMENDATION

STEVEN TISCIONE, Magistrate Judge:

**\*1** Plaintiff Carlene Thompson commenced this suit *pro se* against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union") (collectively "Defendants") alleging claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and common law defamation. *See generally* Pl. Compl., ECF No. 1.

Defendants have jointly moved for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which Plaintiff opposes. *See* Def. Br., ECF No. 22-1; Pl. Opp. Br., ECF No. 23; Def. Repl. Br., ECF No. 26. On June 2, 2021, the Honorable Rachel P. Kovner referred the motion to this Court for a Report and Recommendation. *See* Order, 20-cv-6101 (E.D.N.Y. July 2, 2021).

For the reasons set forth below, this Court respectfully recommends that Defendants' joint motion for a judgment on the pleadings be GRANTED, and Plaintiff's complaint be dismissed without prejudice.

## BACKGROUND

### I. Factual Background

The following facts are taken from the Complaint and declarations submitted in support of the instant motion, [1] and are assumed to be true for purposes of the motion. *See, e.g., Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015) (motion to dismiss); *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (motion for judgment on the pleadings).

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 42 of 50

Thompson v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2022)

Because Plaintiff is proceeding *pro se*, the Court also considers and incorporates factual allegations made for the first time in her response opposing the motions. *See, e.g., Saudager v. Walgreens Co.*, No. 18-CV-437, 2019 WL 498349, at *1 n.1 (S.D.N.Y. Feb. 8, 2019) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.") (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

Plaintiff is a "consumer" and Defendants Equifax, Experian and Trans Union are "consumer reporting agencies" ("CRAs") as defined under the FCRA. Pl. Compl. ¶¶ 6, 7-9, ECF No. 1. On October 25, 2013, Plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Eastern District of New York. *See* Bankruptcy Petition, Ex. A. attached to the Stieber Decl., ECF No. 22-2. In December 2020, Plaintiff "obtained her 'credit files' from Defendants" which showed that she "had public records in the United States Bankruptcy Court, Eastern District of New York." *Id.* These "credit files" indicated that the source of "this public record information was The United States Bankruptcy Court, Eastern District of New York." *Id.* ¶ 34. According to Plaintiff, Defendants did not obtain her bankruptcy information directly from the District Court. *Id.* at ¶ 36. Rather, Defendants obtained the information from a third-party vendor, LexisNexis. *Id.* at ¶ 37. Plaintiff alleges that "the information about this supposed bankruptcy was misleading and falsely represented," *id.* at ¶¶ 23, 38, and that "this error originated with Defendant's [*sic*] public records vendors, and not with 'The United States Bankruptcy Court Eastern District of New York.'" *Id.* at ¶ 39.

**\*2** Thereafter, Plaintiff sent a letter to Defendants requesting a description of the result of their investigation concerning her credit report. *Id.* at ¶ 40. In response, Defendants provided Plaintiff a reinvestigation response in addition to turning over her consumer file. *See id.* at ¶ 41. Plaintiff alleges that neither her "credit files" nor "personal credit reports" disclose that LexisNexis is the actual source of the information regarding her bankruptcy. *Id.* at ¶¶ 41, 46-47, 67, 71. According to Plaintiff, Defendants misdirected her "to courthouses and other government offices with which Defendants [have] no dealings with." *Id.* at ¶ 47.

Based on these allegations, Plaintiff claims that Defendants negligently and willfully: (1) failed to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, pursuant to 15 U.S.C. § 1681e(b); (2) failed to comply with the reinvestigation requirements of 15 U.S.C. § 1681i(A); and (3) failed to disclose information, pursuant 15 U.S.C. § 1681g(A)(2). *Id.* at ¶¶ 60-144. As a result, Plaintiff alleges she suffered "emotional distress and financial loss," *id.* at ¶ 58, including, but not limited to, "credit damage, higher interest rates, damage to reputation, informational injury, embarrassment, humiliation and other emotional and mental distress," *id.* at ¶ 87. *See also id.* at ¶ 59 ("As a result of the acts and conducts allege[d] above, Plaintiff has endured fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business profits."); Pl. Opp. Br., 20 ("As a result, [Plaintiff] was denied credit, including a mortgage refinance, was assessed higher interest rates on the credit [s]he did obtain, and encountered difficulty purchasing insurance and obtaining employment.").

Plaintiff also alleges that Defendants "published statements through writing using Plaintiff's personal information to falsely reflect that Plaintiff was responsible for a federal tax lien, various accounts, and deleting the accounts [s]he was responsible for which proves [P]laintiff has some good credit." Pl. Compl. ¶ 147, ECF No. 1. Defendants published statements are allegedly false because they do not accurately reflect "Plaintiff's accounts, ... credit information, and debt repayment history" and "Defendants knew the statements were false when made and had no factual basis for making the statements." *Id.* at ¶¶ 148-149. Plaintiff claims through this conduct, Defendants defamed her. *Id.* at ¶¶ 145-153.

## II. Procedural History

Plaintiff commenced the instant action on December 14, 2020, asserting eight claims under the FCRA and one common law claim for defamation against Defendants. *See generally id.* Defendants filed Answers to the Complaint on February 23 and 24 and March 5, 2021, respectively. *See* Trans Union Answer, ECF No. 9; Equifax Answer, ECF No. 10; Experian Answer, ECF No. 10. Discovery is ongoing. *See* ECF No. 32.

On June 1, 2021, Defendants jointly moved for a judgment on the pleadings pursuant to Rule 12(c). *See generally* Def. Br., ECF No. 22-1. Defendants argue that Plaintiff fails to state a claim for violations of the FCRA because (1) she has not sufficiently

alleged an injury-in-fact or causation to confer Article III standing and (2) Defendants accurately reported the existence of Plaintiff's bankruptcy and the source of this information. *Id.* Defendants further argue that Plaintiff's defamation claim should be dismissed because it is preempted by the FCRA. *Id.* In support of their joint motion, Defendants submit, among other things, the Declarations of Courtney S. Stieber, Esq. and Cealagh P. Fitzpatrick, Esq., which attach Plaintiff's bankruptcy petition filed with the Eastern District of New York and the consumer file Experian and Equifax provided to Plaintiff. *See generally* Stieber Decl., ECF No. 22-2; Fitzpatrick Decl., ECF No. 22-3.

**\*3** Plaintiff filed opposition to Defendants' motion on June 28, 2021. *See generally* Pl. Opp. Br., ECF No. 23. The opposition largely reiterates the allegations pleaded in the Complaint and includes caselaw almost entirely outside the Second Circuit to argue (1) that although the challenged credit information may technically be accurate it is nonetheless misleading, (2) Article III standing exists based on alleged procedural violations of the FCRA and damage to her credit score, and (3) her defamation claim is not preempted by the FCRA where she has alleged malice and willfulness. *Id.* On July 9, 2021, Defendants filed a reply in support of their motion arguing, among other things, that Plaintiff still fails to sufficiently identify any inaccuracy or misleading information regarding her reported bankruptcy and any alleged damage to Plaintiff's credit score is insufficient to establish an injury-in-fact or causation. *See generally* Def. Repl. Br., ECF No. 26.

On June 2, 2021, the Honorable Rachel P. Kovner referred the motion to this Court for a Report and Recommendation. *See* Order, 20-CV-6101 (E.D.N.Y. July 2, 2021).

## LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court applies the same standard to a motion for judgment on the pleadings as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In evaluating the sufficiency of a complaint, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *id.*, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citation omitted). A pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct ..." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Panjiva, Inc. v. United States Customs & Border Prot.*, 342 F. Supp. 3d 481, 485 (S.D.N.Y. 2018). A Rule 12(c) motion should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Dargahi v. Honda Lease Trust*, 370 F. App'x 172, 174 (2d Cir. 2010) (internal quotation marks and citation omitted); *accord Nathaniel v. City of N.Y.*, No. 16-CV-256, 2017 WL 3912986, at \*1 (E.D.N.Y. Sept. 6, 2017) (citations omitted).

"A document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotations and citation omitted). Courts within this Circuit grant *pro se* litigants a " 'special solicitude' by interpreting a complaint filed *pro se* 'to raise the strongest claims that it suggests.' " *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). However, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting *2 Moore's Federal Practice* § 12.31[1][b] (2005), at 12–61 (internal quotation marks omitted)). The court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Babin v. Dep't of the Treasury*, No. 20-CV-2702, 2021 WL 5860595, at \*9 (E.D.N.Y. Dec. 9, 2021) (citation omitted). Therefore, a court should "not hesitate to dismiss a *pro se* complaint if it fails altogether to satisfy the pleading standard." *Henry v. Davis*, No. 10-CV-7575, 2011 WL 3295986, at \*2 n.5 (S.D.N.Y. Aug. 1, 2011), *adopted by* 2011 WL 5006831 (Oct. 20, 2011).

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 44 of 50

Thompson v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2022)

## DISCUSSION

**\*4**  Because the few factual allegations pleaded in the Complaint are vague and, at times, convoluted, the Court cannot determine with certainty the specific inaccuracies alleged to have been made by Defendants. Liberally construed, it appears, though it is unclear, that Plaintiff alleges that Defendants erroneously reported the existence of her bankruptcy petition, information related to Plaintiff's financial history including her bankruptcy petition, and the source of that information in her consumer file. Therefore, to the extent any of these three alleged inaccuracies are relevant, the Court will consider them.

### I. Defendants' Motion Should Be Granted as Plaintiff Has Failed to Plead Facts Which Show a Federal Court Has Subject Matter Jurisdiction Under Article III of the United States Constitution

#### a. Allegations Relating to Inaccurate Reporting of the Information Source

As a threshold issue, the Court first addresses Defendants' jurisdictional challenge, namely, that Plaintiff has failed to allege facts showing she has Article III standing. "Standing is a federal jurisdictional question determining the power of the court to entertain the suit." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (internal quotation marks and citation omitted). "Article III of the Constitution limits judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citations omitted). Article III standing requires plaintiffs to show (1) an "injury in fact," (2) a "causal connection" between that injury and the conduct at issue, and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted); *accord Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016), *as revised* (May 24, 2016) (citing *Lujan*, 504 U.S. at 560)).

Contrary to Plaintiff's assertion, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341. Rather, to maintain an action under the FCRA, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent' " as a result of a violation. *Id.* at 1548. In other words, "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550.

Denial of credit and other similarly adverse consequences are often the basis of FCRA damages, but "emotional damages may also be freestanding ... where an inaccuracy *alone* causes emotional damages." *Shimon v. Equifax Info. Servs. LLC* ("Shimon II"), 431 F. Supp. 3d 115, 123 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021) (citing *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, at \*19 (S.D.N.Y. June 22, 2016)). Moreover, a plaintiff cannot "recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency." See *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995).

Defendants argue that Plaintiff fails to allege either an injury-in-fact or causal connection to confer Article III standing. Specifically, relying on *Shimon v. Equifax Info. Servs. LLC* ("Shimon"), 994 F.3d 88, 93 (2d Cir. 2021) and *Artemov v. TransUnion, LLC*, No. 20-CV-1892, 2020 WL 5211068, at \*7 (E.D.N.Y. Sept. 1, 2020), Defendants argue that, even assuming Defendants inaccurately disclosed the source of a Plaintiff's credit information, she cannot plausibly allege that this conduct caused her any injury because the credit information reported was itself accurate.

**\*5**  In *Shimon* the Second Circuit upheld the District Court's dismissal on summary judgment of Plaintiff's claim for a negligent violation of Section 1681(g)(a) arising from the CRA Defendant's inaccurate representation that it obtained information about a civil judgment against Plaintiff directly from the state court, when, in reality, it obtained the information from a third party vendor, LexisNexis. *Shimon*, 994 F.3d at 92-93. In doing so, the Second Circuit provided:

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 45 of 50

Thompson v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2022)

> We agree that [Plaintiff] has failed to present any evidentiary basis for concluding that he suffered actual damages as a result of Equifax not disclosing or treating LexisNexis as a "source" or "furnisher" of information to it about the Judgment. Since the characterization provided by Equifax in its credit report was accurate, for [Plaintiff] to have learned that LexisNexis was the intermediary source of Equifax's information from the court would not have enabled [Plaintiff] to avoid the emotional damage he claims to have suffered as a result of Equifax's report that the debt was "satisfied." Nor would he have avoided any of the costs he claims to have incurred in disputing the credit report. [Plaintiff] points to no damages to him arising from Equifax's failure to treat LexisNexis as a "source" or "furnisher" of the information and notify it of [Plaintiff's] dispute.

*Id.* at 93.

However, different reasoning was applied by the District Court in its dismissal of Plaintiff's Section 1681(g)(a) willfulness claim on the CRA Defendant's motion to dismiss, which the Second Circuit affirmed. *Id.* That claim was dismissed on the grounds that Defendants' interpretation of the word "sources" in Section 1681g(a) to include the point of origin excluding a contractor working on the reporting agency's behalf was objectively reasonable. *See Shimon v. Equifax Info. Servs. LLC* ("Shimon III"), No. 18-CV-2959, 2018 WL 4906245, at *4 (E.D.N.Y. Oct. 9, 2018), *aff'd*, 994 F.3d 88 (2d Cir. 2021).

In relying on *Shimon*, Defendants appear to conflate the Second Circuit's reasoning for upholding the dismissal of Plaintiff's Section 1681(g)(a) negligence claim and Section 1681(g)(a) willfulness claim and ignore the procedural posture in which the issues were before the District Court.

First, with respect to the negligence claim, the emphasis of the Second Circuit's ruling was on the evidentiary proofs regarding the Plaintiff's damages submitted to the District Court on summary judgment. Yet, here, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing. *See Haynes v. TransUnion, LLC*, No. 19-CV-7157, 2021 WL 2179346, at *5 (E.D.N.Y. Feb. 4, 2021), *report and recommendation adopted*, 2021 WL 3185581 (E.D.N.Y. July 28, 2021) (citing, among others, *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000) ("when standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing. However, when standing is raised at the summary judgment stage, the plaintiff can no longer rest on 'mere allegations.' ")); *see also Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *3 (S.D.N.Y. Sept. 10, 2021) ("While '[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing, on a motion for summary judgment 'the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts' that demonstrate standing.") (citing *Lujan*, 504 U.S. at 561). "It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action." *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018).

 **\*6** Additionally, Defendants do not seek to dismiss Plaintiff's Section 1681g(a)(2) willfulness claim on statutory interpretation grounds. Consequently, Defendant's reliance on *Shimon* to dismiss Plaintiff's claims for willful and negligent violations of Section 1681(g)(a)(2) is seemingly misplaced.

Instead, *Artemov* appears more analogous to the situation at hand. In *Artemov*, Plaintiff asserted, among other things, that the CRA Defendants issued credit reports reflecting a past due balance for an account Plaintiff held with a banking institution that was lower than the true overall balance. *Artemov*, 2020 WL 5211068, at *1. According to Plaintiff, this inaccuracy caused his credit score to decrease, resulting in a denial of credit. *Id.* The District Court in *Artemov* dismissed the FCRA claim arising from this allegation holding that, even accepting the factual allegations as true, Plaintiff has not shown on the face of the complaint that the CRA defendants conduct caused him an injury in fact. *Id.* at *6-7.

The District Court reasoned that the Plaintiff's theory of liability would have required the CRA Defendants to have disclosed a past due balance that was actually higher, resulting in a credit report which would have listed more bad debt and either the same or lower credit score. *Id.* As such, the alleged inaccuracy "could not have made a difference: in either case, the denial of credit was going to happen and any conclusion to the contrary is just, that, a conclusion, and one that makes no sense." *Id.* at *7. Thus, the District Court concluded that Plaintiff's alleged emotional distress and denial of credit as a result of the CRA defendants' conduct could not confer Article III standing because they were conclusory and implausible. *Id.*

Here, assuming the credit information reported was itself accurate, Plaintiff's allegations that Defendants' alleged failure to disclose the accurate source of her bankruptcy information in her credit file caused her to suffer "credit damage," "denial of credit" and "emotional distress" is conclusory and equally implausible. Plaintiff's credit information would have been the same irrespective of the source of the information provided in her credit file, and, thus, any credit damage and denial, as well as resulting emotional distress, could not have been avoided regardless of the source of her credit information.

### b. Allegations That the Information Reported Was Inaccurate

However, Plaintiff also does allege that her credit information was actually inaccurate or misleading. *See* Pl. Compl. ¶ 50, ECF No. 1 ("The inaccurate reporting of the bankruptcy occurred because Defendants failed to follow reasonable procedures ..."); *id.* at ¶ 122 ("Defendants violated 15 U.S.C. § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that ... was inaccurate or could not be verified"); *id.* at ¶ 146 ("Defendants published statements through writing using Plaintiff's personal information to falsely reflect that Plaintiff was responsible for a federal tax lien, various accounts, and deleting the accounts [s]he was responsible for which proves Plaintiff has some good credit"); *id.* at ¶ 148 ("These [credit reports] are false in that they inaccurately reflect Plaintiff's accounts and credit information and debt repayment history and paint Plaintiff as a financially irresponsible and delinquent person.")

 *7  While at the pleading stage a plaintiff may make general factual allegations to show injury, she still must plead facts that "plausibly allege" Article III standing. *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 735-36 (2d Cir. 2017); *see also Molinari v. Equifax Inc.*, 2022 U.S. Dist. LEXIS 19382 at *10 (E.D.N.Y. Feb. 1, 2022) ("Based on these facts, [Plaintiff's] alleged economic injury-in-fact is not plausible and not sufficient to establish he has standing to assert his claim."). A claim of injury or traceability that is "conclusory or threadbare" is insufficient for Article III standing. *Schwartz v. HSBC Bank USA, N.A.*, 2017 U.S. Dist. LEXIS 94019 at *10 (S.D.N.Y. 2017).

Here, Plaintiff has alleged general injuries, but has not plausibly alleged that those injuries are fairly traceable to the actions of Defendants, an element of Article III standing. Plaintiff has not alleged with any specificity what the supposed inaccuracies are that were reported, how the reported information was misleading, or how the alleged inaccuracies led to the "emotional distress and financial loss" and the "fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury" that Plaintiff alleges.

It is undisputed that Plaintiff did file a bankruptcy petition on October 25, 2013, in the Eastern District of New York. *See* Bankruptcy Petition, Ex. A. attached to the Stieber Decl., ECF No. 22-2. Despite vague and conclusory references to "misleading," "false," or "inaccurate" information, Plaintiff fails to plead any specific facts to support the claim that the existence of her bankruptcy or any specific information regarding her bankruptcy was inaccurate or misleading. She also does not allege any specific inaccuracies regarding her reported "tax liens" and "various accounts." *See* Pl. Compl. ¶ 146, ECF No. 2. Without plausibly pleading inaccuracies, Plaintiff cannot plausibly plead an injury resulted from those inaccuracies. And even if Plaintiff did plead specific inaccuracies, she would still need to plead facts to plausibly show how those inaccuracies caused the injuries she alleges, none of which appear in this complaint. Her only allegations regarding a causal link are conclusory: "As a result of this conflict, the Plaintiff has suffered actual damages" and "As a result of the acts and conduct [alleged] Plaintiff has endured [injuries]." Pl. Compl., ¶¶ 123, 59, ECF No. 1.

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 47 of 50

Thompson v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2022)

Accordingly, because Plaintiff's allegations are insufficient to show Article III standing, the Court respectfully recommends that Defendants' motion for a judgment on the pleadings on the grounds that Plaintiff lacks Article III standing to pursue her claims be GRANTED.

In opposition to the instant motion, Plaintiff requests leave to amend her complaint. *See* Pl. Opp. Br., 21-24, ECF No. 23. Where a complaint is dismissed for lack of Article III standing, that dismissal must be without prejudice. *Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 54 (2d Cir. 2016). Therefore, this Court recommends Plaintiff's complaint be dismissed without prejudice, giving Plaintiff the opportunity to amend and re-submit her complaint should she be able to plead facts showing Article III standing.

Because Plaintiff will be able to amend and re-submit her complaint and because the parties have already briefed the issue, I believe it prudent and economical for the purposes of this Report & Recommendation to also note that, even if Plaintiff were able to clear the Article III bar to jurisdiction, some of Plaintiff's underlying claims as pled in her current complaint would fail a 12(c) plausibility analysis. I provide my reasoning for that assessment below.

### II. Potential 12(c) Plausibility Analysis

#### a. Source Disclosure Claim under 15 U.S.C. § 1681g(a)(2)

**\*8** Section 1681g(a) requires CRAs to disclose to consumers all information in the consumer's file and the sources of that information. *See* 15 U.S.C. § 1681g(a). Relevant to this section, Plaintiff alleges that the consumer files provided by Defendants failed to disclose the actual source from which they obtained Plaintiff's bankruptcy information in violation of Section 1681g(a)(2). Pl. Compl. ¶¶ 70-73, ECF No. 1. As alleged by Plaintiff, in response to her consumer file request, Defendants inaccurately represented that it obtained Plaintiff's bankruptcy information from the district court, rather than LexisNexis. *Id.*

Defendants argue that Plaintiff's consumer files directly contradict her allegation because the files accurately disclosed that Defendants obtained Plaintiff's bankruptcy information from LexisNexis. Def. Br., 12-13, ECF No. 22-1. In support of their argument, Equifax and Experian submit the consumer file that each respectively provided to Plaintiff. Equifax's consumer file represents that the public records information "includes public record items Equifax obtained from local, state and federal courts through a third party vendor, LexisNexis," and provides the contact information for LexisNexis. Equifax Consumer File, Ex. B attached to the Stieber Decl., ECF No. 22-2. Experian's consumer file represents that the public records information "include public records items from court that Experian may have obtained through a third party vendor, LexisNexis," and likewise provides the contact information for LexisNexis. Experian Consumer File, Ex. A attached to the Fitzpatrick Decl., ECF No. 22-3. Therefore, even making all necessary inferences in Plaintiff's favor, based on the contents of these files, Plaintiff fails to state a claim for relief under Section 1681g(a)(2) against Equifax and Experian for failing to disclose they obtained Plaintiff's bankruptcy information from LexisNexis in her consumer file.

Accordingly, because the consumer files directly contradict Plaintiff's allegation that Equifax and Experian failed to disclose LexisNexis as the source of her bankruptcy information, should the Court reach a 12(c) plausibility analysis for Plaintiff's Section § 1681g(a)(2) claim (Count I), I would recommend dismissal of the claim against Equifax and Experian.

#### b. Accuracy of Credit Report and Reinvestigation Claims under 15 U.S.C. §§ 1681e(b) and 1681i(A)

Section 1681e(b) imposes a duty on CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To state a claim under Section 1681e(b), a plaintiff must allege that: "(1) the consumer reporting agency was negligent or willful in that it failed to follow

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 48 of 50

Thompson v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2022)

reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Wimberly v. Experian Info. Sols.*, No. 18-CV-6058, 2021 WL 326972, at *5 (S.D.N.Y. Feb. 1, 2021) (quoting *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019)).

When the accuracy of a report is in dispute, Section 1681i outlines specific procedures that CRAs must follow to ensure the proper reinvestigation of disputed information. Section 1681i requires that if a consumer notifies a CRA of a dispute as to the accuracy of any item of information contained in his file, within 30 days of notification, the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A); *Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013). To state a claim under Section 1681i, the plaintiff must also plausibly allege that "the disputed information is inaccurate." *Khan*, 2019 WL 2492762, at *3.

**\*9** The threshold question under both Sections 1681e(b) and 1681i "is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* (collecting cases). A credit report is inaccurate "either when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Wimberly*, 2021 WL 326972, at *5 (quoting *Wenning*, 2016 WL 3538379, at *9). "Information provided by a consumer reporting agency is misleading where it is 'open to an interpretation that is directly contradictory to the true information.' " *Id.* (quoting *Wagner v. TRW, Inc.*, 139 F.3d 898, 1998 WL 127812, at *1 (5th Cir. 1998)).

Relevant to Sections 1681e(b) and 1681i, Plaintiff alleges that Defendants inaccurately or misleadingly reported the existence of her bankruptcy, information regarding her bankruptcy, and/or the source of that information. *See* Pl. Compl. ¶ 38, ECF No. 1 ("The information about this supposed bankruptcy was misleading and falsely represented."); *Id.* at ¶¶ 81-82 (Consumer reports prepared by Defendants "contained information about Plaintiff that was false, misleading, and inaccurate."); *Id.* at ¶ 85 (Plaintiff "received letters and copies of [her] consumer file in which none of these letters or consumer files contains the actual source of the public records information that it reported about the Plaintiff."). Defendants argue that Plaintiff cannot sustain a claim for relief under Sections 1681e(b) and 1681i because the credit information regarding her bankruptcy was accurately reported. *See* Def. Br., 9-10, ECF No. 22-1; Def. Repl. Br., 7-8, ECF No. 26.

Here, Plaintiff fails to state a claim for relief under Sections 1681e(b) and 1681i based on the alleged reporting of her bankruptcy because, as detailed above in my Article III analysis, she has not alleged with any specificity the alleged inaccuracies reported or how the reported information was misleading. *See Khan*, 2019 WL 2492762, at *4 (dismissing claims under Sections 1681e(b) and 1681i "because [plaintiff] has not alleged facts showing that the information that Defendant reported about him is inaccurate"); *Wimberly*, 2021 WL 326972, at *5 (dismissing claims under Sections 1681e(b) and 1681i(a) because the complaint "pleads no specific *facts* to support ... proposed claims that the information Defendant reported was inaccurate"); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2011 WL 347222, at *3 (S.D.N.Y. Feb. 1, 2011) (dismissing claims under Sections 1681e(b) and 1681i because the complaint, among other things, "does not identify the inaccurate information reported by each [consumer reporting agency] Defendant, or when the information was reported or to whom").

Similarly, Plaintiff fails to state a claim for relief under Sections 1681e(b) and 1681i based on the allegation that Defendants failed to disclose LexisNexis as the source of her reported bankruptcy in her consumer files. Plaintiff appears to conflate the source of her credit information with the credit information itself. *See Perez v. Experian*, No. 20-CV-9119, 2021 WL 4784280, at *9 (S.D.N.Y. Oct. 14, 2021), *report and recommendation adopted*, No. 20-CV-9119, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021) ("[I]naccuracies are only actionable if they affect an assessment of a consumer's credit, insurance, or employment and fit within the definition of a 'consumer report' under the FCRA.") (citing 15 U.S.C. § 1681a(d)(1) and *Williams-Steele v. Trans Union*, No. 12-CV-0310, 2014 WL 1407670, at *4 (S.D.N.Y. Apr. 11, 2014), *adopted by* 2015 WL 576707 (Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. TransUnion*, 642 F. App'x 72 (2d Cir. 2016) ("[N]o restriction is put on the use of information that is not a 'consumer report' ... Address information on a consumer, for example, is not a consumer report because it is not information that bears on any of the characteristics described in 15 U.S.C. § 1681a(d)(1).")).

Case 1:25-cv-00683-GTS-MJK    Document 5    Filed 06/16/25    Page 49 of 50

Thompson v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2022)

**\*10**  To state a claim for relief under Sections 1681e(b) and 1681i, a plaintiff must sufficiently allege that their consumer report contains inaccurate *credit information. See Artemov*, 2020 WL 5211068, at \*2 ("In considering a challenge under § 1681e(b) or § 1681i, the 'threshold question' is whether the *disputed credit information* is accurate ...") (citations omitted). As is relates to the consumer file, the failure to disclose the source of the disputed credit information more appropriately forms the basis of a claim under Section 1681g(a)(2). Therefore, even making all necessary inferences in Plaintiff's favor as required at this stage, Plaintiff fails to state a claim upon which relief can be granted under Sections 1681e(b) and 1681i for Defendants' alleged failure to disclose LexisNexis as the source of her bankruptcy information in her consumer file.

Accordingly, this Court would find, on Plaintiff's current complaint, that she fails to plausibly plead a claim under Sections 1681e(b) (Count II) and 1681i (Counts III-VIII).

### c. Defamation Claim

Defendants also argue that Plaintiff's defamation claim should be dismissed because it is preempted by the FCRA. *See* Def. Br., 13, ECF No. 22-1. Two sections of the FCRA are relevant to this argument. Section 1681h(e) provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, .... except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Section 1681t(b)(1)(F) preempts any state law claim "with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b). Although the latter, which was enacted after Section 1681h(e), accomplishes a more sweeping preemption, its application is limited to furnishers of information to CRAs concerning subject matter regulated under Section 1681s-2. *See Macpherson v. JPMorgan Chase Bank*, N.A., 665 F.3d 45, 48 (2d Cir. 2011); *Mund v. Transunion*, No. 18-CV-6761, 2019 WL 955033, at \*4 (E.D.N.Y. Feb. 27, 2019). Because Defendants are CRAs, Section 1681h(e) instead applies.

Section 1681h(e) preempts defamation claims against CRAs unless the alleged false information is furnished with malice or willful intent to injure the plaintiff. *See Frydman v. Experian Info. Sols., Inc.*, No. 14-CV-9013, 2016 WL 11483839, at \*17 (S.D.N.Y. Aug. 11, 2016), *report and recommendation adopted*, 2016 WL 5661596 (S.D.N.Y. Sept. 30, 2016) ("[Section 1681h(e)] essentially affords ... qualified immunity against the types of state law claims asserted by [plaintiff] unless he can establish that [defendants] acted 'with malice or willful intent to injure' him") (citations omitted); *Ogbon*, 2013 WL 1430467, at \*10 ("Thus, defendants have qualified immunity against defamation actions, which can only be overcome where plaintiff shows that defendants acted with malice or willful intent.") (collecting cases).

Defendants argue that Plaintiff cannot adequately plead maliciousness or willfulness because the information regarding her bankruptcy was accurately reported. *See* Def. Repl. Br., 11, ECF No. 26. However, based on the Complaint, Plaintiff's defamation claim does not appear to arise from the same conduct that gives rise to her FCRA claims. Indeed, Plaintiff's defamation claim alleges for the first time anywhere in the Complaint that Defendants falsely published that she "was responsible for a federal tax lien, various accounts, and deleting accounts [s]he was responsible for which proves plaintiff has some good credit." Pl. Compl. ¶ 146, ECF No. 1. Plaintiff alleges that Defendants knew these statements were false and had no factual basis for making them because she repeatedly notified Defendants that the information was inaccurate. *Id.* at ¶¶ 149-150. Moreover, according to Plaintiff, "Defendants [ ] acted with malice by failing to communicate the information provided to them by Plaintiff to [those] whom it provides credit information concerning the Plaintiff." *Id.* at ¶ 152. Defendants have not submitted exhibits showing her liens and accounts were accurately reported, and Plaintiff has pled the alleged inaccurate reports were willful or malicious.

**\*11**  Therefore, the Court would find at this point that the Plaintiff's defamation claim would survive under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendants' motion for a judgment on the pleadings be GRANTED as to Plaintiff's complaint and that it be dismissed without prejudice.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

## SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2022 WL 2467662

---

### Footnotes

1    In support of Defendants' joint motion, Equifax and Experian submitted attorney declarations attaching the consumer file that each respectively provided to Plaintiff and Plaintiff's Chapter 7 bankruptcy petition. *See* Bankruptcy Petition, Ex. A attached to the Declaration of Courtney S. Stieber, Esq. ("Stieber Decl."), ECF No. 22-2; Equifax Consumer File, Ex. B attached to the Stieber Decl., ECF No. 22-2; Experian Consumer File, Ex. A attached to the Declaration of Cealagh P. Fitzpatrick, Esq. ("Fitzpatrick Decl."), ECF No. 22-3. These exhibits are properly considered in the context of a Rule 12(c) motion as they are either public records or integral to and incorporated by reference to the Complaint. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) ("[C]ourts may on a Rule 12(c) motion —just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint 'incorporate[s] by reference,' that is "integral" to the complaint.") (citation omitted). But they are not provided the same assumption of truth as Plaintiff's allegations are at the motion to dismiss stage.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.